In the Matter of the Petition of KINGS COUNTY TRUST COMPANY to Render and Settle Its Account as Trustee, etc., under the Will of JAMES S. T. STRANAHAN, Deceased.

MARY S. CROXSON, Appellant; GEORGE G. DUTCHER and Others, Respondents.

Second Department, December 22, 1922.

Wills — construction — trust in corporate stock for benefit of son and on his death without issue then for benefit of daughter, if surviving, and on her death principal to be paid to her issue, if any, and if she has no issue then to third person — corresponding trust established for daughter — codicil executed after son's death revoked all gifts to him and bequeathed to daughter all residue of estate — revocation of gift to son did not pass principal of trust to residue but daughter was entitled to income — codicil provided that shares of stock bequeathed in trust should be valued at $100 each — increase in value over value fixed by testator passes to life beneficiary.

A will bequeathed certain shares of corporate stock to a trustee in trust for the benefit of the son of the testator and provided that on the son's death the stock should be transferred to his issue, and in case he left no issue then to the issue of the daughter of the testator, and in case the daughter left no issue then to a third person. The same paragraph of the will provided that in case the son should die without issue leaving him surviving the daughter of the testator then the trustee should pay the income of the trust to the daughter for her life and after her death should pay over the principal of the fund to her issue and in default of issue to said third person. By another paragraph of the will a trust similar in every respect in favor of the daughter was created. After the death of the son the testator executed a codicil to his will in which, after reciting the death of the son, he revoked all gifts therein made to him or to his issue and gave, devised and bequeathed " to my daughter * * * all the rest, residue and remainder of my Estate both real and personal."

*Held*, that the provision in the codicil did not have the effect of eliminating all the provisions of the will in which the testator's son was a beneficiary and casting into the residue the subjects of those provisions, but that the effect was merely to accelerate the provisions made for the daughter in the trust created for the

benefit of the son and to eliminate all possible intervening claims; therefore, the principal of the trust did not pass to the residuary legatees and the trust is to be carried out as though the revocation clause had never been written. The provision in the codicil that, in estimating the value of the stock for distribution or otherwise, it should be computed at its face or par value of $100 per share, had the effect of limiting the trust fund to the amount represented by one hundred times the number of shares bequeathed, and any increase in the value of the shares over and above that amount passed to the beneficiaries of the trust.

APPEAL by Mary S. Croxson from certain parts of a decree of the Surrogate's Court of the county of Kings, entered in the office of the clerk of said court on the 23d day of March, 1922.

*Francis L. Durk*, for the appellant.

*Herbert T. Ketcham* [*Burchard Dutcher* with him on the brief], for the respondent George G. Dutcher.

JAYCOX, J.:

The life beneficiary, Mary S. Croxson, appeals from a decree of the Surrogate's Court of Kings county, which construes the will and codicils thereto of James S. T. Stranahan, deceased. The decree in question was entered upon an accounting by the trustee named in said will and codicils and construes said will adversely to the life tenant's contentions.

James S. T. Stranahan departed this life September 3, 1898, leaving a last will and testament dated July 17, 1880, and three codicils, the first dated October 19, 1895; the second, January 12, 1897, and the third, April 19, 1897. These instruments were all duly admitted to probate by the surrogate of Kings county September 12, 1898.

So far as material to the questions at issue here, the will of said testator disposed of his estate as follows: By the 2d paragraph thereof he gave to a trustee named therein 2,000 shares of the capital stock of the Atlantic Dock Company in trust, to collect the dividends that might from time to time be declared thereon and to pay the same to his wife during her life, subject to a qualification hereinafter mentioned, and after her decease to pay over one-half thereof to his son, Fitch J. Stranahan, during his life, and one-half thereof to his daughter, Mary S. Croxson, during life, and upon the decease of said son to pay over and transfer one-half of said 2,000 shares to his issue, and in case he should leave no issue, to his daughter, Mary S. Croxson, if living, or, if not, to her issue; and in case there should be no issue of said daughter, to his niece, Mary Helvetia B. Dutcher, and upon the decease of his said daughter, Mary S. Croxson, to pay over and transfer one-half of

2

Second Department, December, 1922.                    [Vol. 204

said 2,000 shares to her issue; and in case she should leave no issue, to his son, Fitch J. Stranahan, if living, or, if not, to his issue; and in case there should be no issue of said son, to his niece, Mary Helvetia B. Dutcher.   This paragraph further provided that if the dividends collected upon said 2,000 shares during the life of his wife should exceed the rate of five per cent per annum, the excess over five per cent per annum should be paid to his children, Fitch J. Stranahan and Mary S. Croxson, in equal shares during their lives, and upon their decease to their respective issue, and in case of the death of both of said children without issue, to his niece, Mary Helvetia B. Dutcher.   The details as to the distribution among the issue of a deceased child have been omitted from this summary.

The 3d paragraph of the will read as follows:

" *Third.* I give and bequeath to the said the Brooklyn Trust Company Five Hundred (500) shares of the Capital Stock of the Atlantic Dock Company In Trust to collect the dividends that may from time to time be declared thereon, and to pay the same to my son Fitch J. Stranahan during life, and upon his decease to pay over and transfer the said Five hundred shares to his issue, if more than one in equal shares, the issue of any deceased child taking by representation, and in case he shall leave no issue to the issue of my daughter Mary S. Croxson, if more than one in equal shares the issue of any deceased child taking by representation, and in case there shall be no issue of my said daughter to my niece Mary Helvetia B. Dutcher.   In case of the decease of my said son without leaving issue, but leaving him surviving his sister Mary S. Croxson, my said trustee shall pay to her during life, the aforesaid dividends, and after her decease pay over and transfer the said Five hundred shares to her issue, and in default of issue to Mary Helvetia B. Dutcher as above directed."

The 4th paragraph provided for a trust similar in every respect in favor of the daughter, Mary S. Croxson, with a provision that in case of her death without issue the gift over was to the issue of his son, and in case the son survived the daughter, the same provision was made for him in this paragraph as was made for the daughter in the 3d paragraph.

By subsequent provisions of his will he gave shares of stock varying in amount from 200 shares to 10 shares to various legatees therein named.   He gave to his son, Fitch J. Stranahan, all the real estate which he should own at the time of his decease, subject to the life use of the homestead by his wife therein provided for. He gave the residue and remainder to his two children.

By the first codicil to his will he gave 300 shares of the capital

stock of the Atlantic Dock Company to his trustee, the net income therefrom to be paid to his wife, to be used by her for the payment of taxes, insurance and repairs on the premises given her during her life. He also made some slight changes in directing gifts of the capital stock of the Atlantic Dock Company in the will.

The 8th paragraph of this codicil made provision for estimating the value of the stock of the Atlantic Dock Company, for distribution or otherwise, and will be quoted hereafter at length.

The second codicil contained this provision:

" *Third.* Whereas my son Fitch J. Stranahan has deceased since the making of my said will and codicil of October 19th, 1895, I revoke all gifts therein made to him, or to his issue, and I give, devise and bequeath to my daughter Mary S. Croxson all the rest, residue and remainder of my Estate, both real and personal."

The 4th paragraph of this codicil provided that if his niece, Mary Helvetia B. Dutcher, should predecease him, the bequests made to her in his will should not lapse " but shall inure to, and are hereby given to her surviving issue in equal shares, share and share alike."

The third codicil merely changed the trustee under the various trusts.

The first question that arises is as to the construction of paragraph " third " of the second codicil, revoking all gifts to his son Fitch, the contention of the appellant being that the revocation provision above quoted completely eliminates from the will all those provisions of the will under which the testator's son was a beneficiary and permits the subjects of those provisions to fall into the residuum and thus pass to the appellant, the residuary legatee and devisee. I cannot agree with this contention. The actual gifts in both the 3d and 4th paragraphs of the will are not to the testator's son but are to a trustee. Under the trusts thus established the testator's son was one of the beneficiaries, and the revocatory provision is given full effect when the beneficial provisions in favor of the son are nullified. This construction finds support in several of the provisions of the will and codicils. *First,* it is to be observed that if the son had survived the testator the remainder did not go at his death, without issue, to the appellant, Mary S. Croxson, but the trust was continued and during her life she received the income and at her death the remainder was given to Mary Helvetia B. Dutcher. No reason is suggested why this provision in the trust for the benefit of the appellant in case the son survived the testator should be changed to an absolute gift to the appellant because the son predeceased the testator. So far as can be seen now, the same reasons existed for a trust in one

instance as in the other.  *Second,* a similar provision for the daughter is made by the "fourth" paragraph as is made for the son by the "third" paragraph.  That trust is not revoked by reason of the son's death, and if the trust in the "third" paragraph is not revoked the only effect of the revocation clause is to make both trusts just alike.  By this construction the daughter is given the same beneficial interest in the shares originally given in trust for the son as she has in those originally set aside for her benefit. *Third,* the intention of the testator not to make an absolute gift to the appellant of the stock mentioned in the "third" paragraph is further indicated by the fact that in the next paragraph to the one containing the revocation he provided for the event of the death of the remainderman, Mary Helvetia B. Dutcher, prior to his own death by directing that in that event "the bequests made to her in my said Will shall not lapse, but shall inure to, and are hereby given to her surviving issue in equal shares, share and share alike."  It is true that the will contains other provisions in favor of the remainderman, to which the paragraph last above quoted is applicable.  If it were not for this fact, that provision would be almost conclusive.  Notwithstanding those provisions, it affords convincing evidence that the testator had no desire to deprive her (the remainderman) of any of the benefits theretofore conferred upon her by his will.  This revocation clause, therefore, so far as applicable to the "third" paragraph of his will merely made clear the desire of the testator that the appellant's enjoyment of the provision made for her in that "third" paragraph should be accelerated and all possible intervening claims eliminated. Probably this provision was unnecessary, but out of an abundance of caution the testator made it and it should be given only such meaning as it is reasonably clear the testator intended it should have.

All the other questions relate to the distribution of funds of the estate derived from the testator's holdings of Atlantic Dock Company stock.  These questions concern only those shares of stock given in trust and arise between the life tenant and remainderman — the life tenant, as usual in controversies of this character, claiming that the funds are income and the remainderman that they are capital.  Although presented in many different forms, all the remaining questions arise out of the dispute as to what is the capital of the various trusts and what is income thereon.  The determination of that question — for it is only one question — necessarily determines all other matters in controversy.

The testator, James S. T. Stranahan, at the time of his death and for a long time prior thereto, was the president of the Atlantic Dock Company.  He was the moving spirit therein and conversant with

all its affairs. At the time of his death he was the owner of 6,511 shares of the capital stock thereof. Said company was organized under chapter 215 of the Laws of 1840, and acts amendatory thereof, for the purpose of erecting and maintaining docks, bulkheads, piers, basins, foundries and warehouses for commercial uses in the then city of Brooklyn, with the right to collect dockage and wharfage. I refer thus at length to its chartered powers for the purpose of showing that it was a commercial enterprise and not an investment corporation. The capital stock of the company was $1,000,000, divided into 10,000 shares of $100 each. When the testator executed his will — July 17, 1880 — the Atlantic Dock Company was actively engaged in carrying on the business for which it was incorporated. The exact value of the stock at that time has not been found, nor has it been expressly agreed upon, but upon the argument before the surrogate the counsel for the respondent asserted that it was worth less than $100 per share and the appellant claims that to be the fact. For the purposes of this decision I think it may be safely assumed that it was not worth more than par. On December 31, 1894, according to its books, the Atlantic Dock Company had assets amounting to $2,854,879.26. These consisted largely of warehouses, piers and wharves. Its liabilities, consisting largely of bonds secured by mortgages, debenture bonds, notes, etc., amounted to $1,000,000 less than its assets, thereby making the capital stock worth par. It certainly cannot be assumed that it was worth any more. If shown at a smaller value it would have shown a deficit or impairment of capital.

On January 29, 1895, the Atlantic Dock Company sold practically all its property to the Brooklyn Wharf and Warehouse Company for the sum of $3,534,637.63. This practically terminated the transaction by the Atlantic Dock Company of any of the business for which it was incorporated. So that after that sale instead of being a going concern engaged in the business for which chartered, it was the custodian of a fund amounting to the above-mentioned sum of $3,534,637.63. It disposed of practically all of this sum as follows: It paid off indebtedness aggregating $1,782,907.90, and purchased $1,000,000 of the bonds of the Brooklyn Wharf and Warehouse Company at par, and bonds of the United States for which it paid $787,875. This sale had, therefore, resulted in making the capital stock worth nearly twice what it was before, and the money received therefrom was so invested that a profit was practically certain and the chance of loss very remote. This situation continued and on November 19, 1895, the assets of the Atlantic Dock Company amounted to $2,987,964.45, more than

double the par value of the stock. During all this time the testator was the president of the company, its largest stockholder and active in its management. On the 19th day of October, 1895, Mr. Stranahan made the first codicil to his will, containing this very significant provision:

" *Eighth.* Whereas in my said will I have made certain bequests and dispositions of the Capital Stock of the Atlantic Dock Company, now it is my Will that in estimating the value of said stock for distribution or otherwise, it shall be computed at its face or par value of one hundred dollars a share."

The cardinal rule in construing all wills is to ascertain the intention of the testator, and then, if that intention is not illegal, to carry it into effect. In this instance the testator had a purpose in adding that clause to the directions for the disposition of his property. Why was not that purpose just what it appears to be on the face of the provision, viz., a rule by which the capital of all the trusts created by the will could be ascertained? When the will was made, the Atlantic Dock Company was actively engaged in the business for which created. Its dividends prior to that time had undoubtedly been moderate; it had accumulated no surplus; it owed large sums of money and there was no reason to anticipate extraordinary dividends. The provisions of his will, while this situation existed, were ample to take care of dividends which then seemed likely to accrue. However, before the testator made the first codicil to his will this situation was entirely changed. The Atlantic Dock Company had gone out of business. Dividends were no longer dependent upon its earnings as a commercial enterprise. It had funds on hand and invested double in amount the face value of the capital stock. A commercial concern could not continue as a vehicle for the investment of money and the holding of securities. Extraordinary dividends were inevitable. This was patent to any man of ordinary business experience and foresight. Then to a man of Mr. Stranahan's broad experience and conceded business acumen this was not only clear but the necessity for some provision for the guidance of those charged with the administration of the trusts created by his will was equally clear. His foresight has been amply justified by subsequent events. The Atlantic Dock Company had been dissolved and the funds now the subject of this controversy are moneys paid over to the trustee under the will by the receivers in the dissolution proceeding. The surrogate has declined to apportion these funds upon the ground that the evidence before him did not show how much constitutes capital and how much was income. No question causes more trouble than this one in regard to the ownership of

extraordinary dividends upon stock held in trust. (*Matter of Osborne*, 209 N. Y. 450.) It seems clear that the testator recognized the difficulty of determining which is capital and which is income, which arises in cases like this, and decided that question himself. Such a provision, if it recognizes the statutory inhibition against the accumulation of income, is legal and will be enforced. (*Matter of Harden*, 177 App. Div. 831; affd., 221 N. Y. 643; *Matter of Osborne, supra; Matter of Rogers*, 22 App. Div. 428.).

The holding of the court in *Matter of Osborne* (*supra*) is that all ordinary dividends are payable to the life beneficiary, as are also all extraordinary dividends which do not entrench upon the capital of the trust fund. The testator could have had no other purpose in inserting this provision in his will except to fix the capital of these trust funds. It is immaterial that he, by his will, gave some shares of stock to which this provision does not apply. There was no necessity for its application to shares of stock given outright to any person. The gift to such person carried the stock and all dividends, ordinary and extraordinary. The gift to the trustee does the same, but the trustee must retain the capital of the trust fund intact and he must also pay to the beneficiary all the income which does not intrench upon that capital. A testator may well, as the testator in this case did, provide a constant by means of which that capital may always be measured. The learned and industrious counsel for the respondent has urged upon us with ingenuity, skill and much learning, many points in support of the surrogate's decree, but I see no occasion to allude to them in detail herein.

The decree of the Surrogate's Court of Kings county should be so modified as to direct that the several trusts mentioned in the will and codicils of the testator be established upon a basis of $100 for each share of stock of the Atlantic Dock Company given for that purpose, and that the beneficiary under said trusts be paid all sums arising from said shares of stock in excess of the capital of said trusts as so established; and as so modified affirmed, without costs.

BLACKMAR, P. J., RICH, MANNING and YOUNG, JJ., concur.

Decree of the Surrogate's Court of Kings county modified in accordance with opinion, and as so modified affirmed, without costs.