In the Matter of the Estate of HARWOOD BYRNES, Deceased.

Surrogate's Court, New York County, November 2, 1933.

*Hughes, Schurman & Dwight* [*Charles E. Hughes, Jr.,* and *Ernest L. Wilkinson* of counsel], for Margaret M. Byrne, surviving spouse.

*Mitchell, Taylor, Blanc, Capron & Marsh* [*Edwin W. Cooney, Harry A. Leigh* and *W. Meade Keller* of counsel], for the petitioners.

*William B. Northrop* [*Samuel Seabury* and *George Trosk* of counsel], for the Norwich State Tuberculosis Sanitarium and Christ Episcopal Church, respondents.

*Simpson, Thacher & Bartlett* [*W. E. Beer, Jr.,* of counsel], for Yale University.

*William J. O'Shea, Jr.,* special guardian.

FOLEY, S. In this accounting proceeding questions have arisen as to the effect upon the terms of the will of the withdrawal by the widow of the testator of her elective share under section 18 of the Decedent Estate Law. In a previous special proceeding I held that the terms of the will did not sufficiently comply with the statute so as to prevent the election by the widow. It was decided that she was entitled to take her statutory share. That determination was affirmed by the Appellate Division and by the Court of Appeals (141 Misc. 346; affd., 235 App. Div. 782; affd., 260 N. Y. 465).

The net estate remaining after the payment of administration expenses and debts is approximately $180,000. The widow is entitled, as her statutory elective share, to one-half of the net estate, approximately $90,000. The will provided for preliminary legacies or trusts aggregating $40,000 to three educational, religious and charitable corporations. The residue was bequeathed in trust to the widow for her life or until her remarriage. Her right to elect was sustained because of the inclusion in the will of the condition as to remarriage, instead of granting to her an unconditional life estate. (*Matter of Byrnes, supra.*) Upon the death or remarriage of the widow, the remainder was bequeathed to such of the children of the testator's brother, Ronald M. Byrnes, who were living at the time of the death or remarriage of the widow and to the issue of a deceased child of said brother living at either of those events.

Secondary trusts were created for the life of each child of the brother living at the death of the testator. There are certain contingent gifts over in the event of the absence of issue which are not material here.

(1) The first question for determination is, Shall the amount withdrawn, by reason of the election of the widow, be charged wholly out of the residuary trust fund? Or, shall the amount withdrawn by the widow be equitably apportioned out of the pecuniary legacies, the charitable trust funds and the residuary fund?

I hold that the latter method should be adopted and that each of the pecuniary legatees, the charitable trusts and the remaindermen must ratably contribute to the withdrawn share of the widow. Since one-half of the net estate has been withdrawn by the widow, each legacy, whether outright or in trust, and the residuary trust fund, as it would have been originally constituted, must be reduced by one-half. The charitable gifts amounting to $40,000, will thereby be reduced to the sum of $20,000. The residuary trust fund, which would have amounted to the sum of $140,000 if the widow had not elected, will be reduced to approximately $70,000. Examples in hypothetical estates of the desirable method of computation may be found in Dodge's Estate Administration and Accounting (pp. 90, 96).

In the drafting of section 18 of the Decedent Estate Law, which conferred this new right of election upon a surviving spouse, the Decedent Estate Commission gave serious consideration to the effect of the withdrawal of the intestate share upon the terms of the will.

We are dealing here with a right of election which is absolute. No question is involved, therefore, as to the source of payment of the limited benefits given by paragraphs (b) and (e) of subdivision 1 of the section. The situation here is covered by subdivision 2, which reads as follows: "Where any such election shall have been made, the will shall be valid as to the residue remaining after the elective share provided in this section has been deducted and the terms of the will shall as far as possible remain effective." This subdivision was purposely drawn in general terms with a deliberate design to vest in the courts an equitable authority over the apportionment of the charge, caused by the withdrawal by the surviving spouse. The alternative of attempting to draft and impose meticulous rules applicable to every estate was rejected by the Commission. By the equitable plan adopted, it was believed that just treatment of all the beneficiaries named in the will would be secured. By making the method of contribution elastic and based

upon equitable principles, injustice and discrimination against any of the beneficiaries of an estate would be avoided. This intent and purpose of the Commission was accepted by the Legislature in the enactment of the section and the legislative intent must be similarly construed.

It is significant, too, that the principle of equitable contribution by all the beneficiaries, to the withdrawn share of the surviving spouse was carried out by parallel amendments to section 35 of the Decedent Estate Law recommended by the Commission. That section provides protection for a surviving spouse, who was married to the decedent after the making of a will. The surviving wife or husband was to receive her or his intestate share, unless certain provisions mentioned in the section were made for such spouse. The amendment to section 35, recommended by the Commission, required ratable contribution by each legatee named in the will in proportion to the pecuniary benefits which would have been received, if partial intestacy had not occurred. This amendment conformed the method of contribution to that which existed in section 26 of the Decedent Estate Law, in its provisions for the protection of a child born after the-making of the parent's will. Section 124 of the Decedent Estate Law with its provision for the equitable apportionment of the new estate tax furnishes another example of the policy of the Commission. My learned colleague, Surrogate DELEHANTY, in *Matter of Devine* (147 Misc. 273), stated tersely and accurately the general purpose of the Decedent Estate Commission and the intent of the Legislature. He wrote: " That result should be sought which will preserve so far as is possible the testamentary scheme and the relative equities of the beneficiaries. * * * The interesting and difficult questions which have arisen in respect of this small estate emphasize the wisdom of the distinguished members of the Commission to Investigate Defects in the Laws of Estates in not establishing any statutory rule respecting the source of the intestate share or the result of the election to take it. They no doubt foresaw the difficulties and preferred to leave the questions in each case to be decided on equitable principles in the light of the testamentary scheme of the individual will."

In the pending proceeding, by the method adopted by the surrogate, of charging the statutory share of the widow proportionately against the charitable legatees and against the corpus of the residuary trust, equity will be accomplished, and in the language of the section, " the terms of the will shall as far as possible, remain effective." The intention of the testator will likewise be preserved as nearly as possible. If preliminary legatees

were not required to contribute, injustice would result. We may assume, for example, an estate of $100,000, of which $25,000 was given by preliminary legacies to charity, $25,000 as legacies to friends, and $50,000 as a residue to the brothers and sisters of the testator. We will assume the existence of a right of election and its exercise by the widow. If the widow's intestate share of $50,000 was to be deducted from the residue alone, and no reduction made as against the charitable and other legatees, the entire residue would be destroyed and the intention of the testator to benefit his brothers and sisters would be defeated. Experience has shown that in the great majority of wills the preliminary legacies are given to charities, distant relatives and friends of the testator. The residue is usually given to the spouse for life or absolutely or to the children or to the dependent and nearer relatives either outright or in trust. By apportioning the withdrawn share against all the beneficiaries, the general plan of the will may be, to a great extent, preserved and the balance maintained between the respective preliminary and residuary beneficiaries. The testator may take advantage of the privileges given him under the statute and provide for his wife with a life interest in part of his estate, the minimum amount of which is fixed in the section. If he does not, he is charged with knowledge that the widow may claim her statutory right and that the effective remaining portions of his will must be ratably modified to meet the withdrawal.

I have accordingly adopted the method of equitable apportionment and ratable contribution.

(2) The second question presented is whether the remainders of the residuary trust, originally created for the widow, may be accelerated and presently distributed. Under section 18 the effect of the exercise of the absolute right of election of the widow to take her full statutory share constitutes a surrender of all of her rights under the will. In this particular estate the interest of the widow, as life tenant of the residuary trust, has been nullified by her election. The provisions for the disposition of the remainder upon her death or remarriage are clearly contingent. They are gifts to a class, the membership of which can be ascertained and fixed only at the date of her remarriage or at the time of her death under the terms of the will. It is argued that the effect of the exercise of the right of election is equivalent to the assumption of the death of the widow, and that the remainder should be accelerated and paid over presently just as if the death of the widow had occurred at or prior to the death of the testator. This contention is without foundation. The remainder is contingent and under the firmly established and salutary rule, applied by the

Court of Appeals in numerous authorities, a contingent remainder can never be accelerated upon the failure of the intermediate estate. (*Matter of Silsby,* 229 N. Y. 396, at p. 404; *Kalish* v. *Kalish,* 166 id. 368; *Matter of Stranahan,* 204 App. Div. 16.) The basis for the rule is easily understandable. By its appl cation, the intent of the testator to give the remainder of a fund to a certain class of persons, determinable as to division and membership upon an event fixed by him, only can be effectuated. If by a process of judicial alteration of the will, and not because of any illegality contained in it, · the class of takers was changed from those whom the testator selected, to a class of judicial choice, the intent of the testator would be destroyed. Where the remainder is *vested,* in title and interest, as of the date of the death of the testator under the terms of the will, acceleration is desirable and should be enforced. Where the remainder is *contingent,* and the widow's interest as life tenant has lapsed because of her election, the trust fund created for her benefit must be maintained by the trustee. The income, surrendered by her, being undisposed of, is to be paid to the persons presumptively entitled to the next eventual estate. (Real Prop. Law, § 63.) The proportional amount of income to be paid to each remainderman is to be fixed by his or her contemporary contingent interest in the remainder of the fund, or by way of secondary life estate where there is provision for a secondary life estate. When the event fixed by the testator for the cessation or termination of the widow's life estate occurs, the primary trust likewise is terminated and the fund or the income thereof may be paid over to the persons entitled to take as remaindermen or secondary life tenants under the provisions of the will. In the present estate the trustees are directed by the surrogate to hold the fund subject to these conditions. Some reference has been made by counsel that a contrary determination to that adopted here was reached by the courts of Pennsylvania in *Matter of Disston* (257 Penn. St. 537). It is claimed that the rule laid down in that case is to treat the election of the widow as equivalent to her death, unless a reading of the general provisions of the will makes it clear that the suspension of ownership measured by her life was for purposes other than merely to benefit the widow. The later case of *Matter of Lonergan* (303 Penn. St. 142) appears to distinguish the decision in *Matter of Disston* (*supra*). The opinion in the *Lonergan* case indicates that the remainder will not be accelerated in every case and that the rule of acceleration is not fixed and absolute. Whatever may be the rule in Pennsylvania, the policy of our New York courts, which prohibits the acceleration of contingent remainders, is too firmly established,

to encourage or permit a departure from it, in the ascertainment of an interest after the exercise of the right of election.

(3) Certain income has been accumulated during the period of administration derived from various investments held by the executors. It is contended that the widow is not entitled to share in this income and that the entire amount of income earned should be set off to the principal of the residuary trust. This contention must be overruled. In the ascertainment of the statutory share to which the widow is entitled, the estate is to be treated as though there was complete intestacy. In such an event the intestate share of the widow includes not only the fractional part of the net estate derived from property and securities owned by the decedent at the time of his death, or the proceeds of sale thereof, but also includes the same fractional share of the income earned upon them during the period of administration and up to the time of final distribution. As to the balance of the income, after the payment of the widow's share, payment is to be made in accordance with the customary rules of law, applicable to the payment of interest or income to the legatees, beneficiaries of trusts and to the substituted life tenants, the presumptive owners of the next eventual estate.

Submit decree on notice settling the account accordingly.