In the Matter of the Estate of JOHN L. CURLEY, Deceased.

Surrogate's Court, Kings County, October 26, 1936.

*Foley & Martin*, for James A. Martin, as executor.

*Emil P. Grossi*, for John T. Johnston, as ancillary administrator of Helen Johnston, deceased, one of the residuary legatees.

*Cassidy & Cassidy* [*Mortimer M. Cassidy* of counsel], for the Roman Catholic Church of St. Matthew, East Stroudsburg, Pa., legatee.

*Jacob L. Holtzmann*, for the assignees of Hugh F. Curley and John Curley, residuary legatees, and for the surviving spouse, Grace S. Curley.

*Edward L. Kelly*, for St. Mary's Roman Catholic Church of Jersey City, N. J., legatee.

*Walter Jeffreys Carlin*, special guardian of Margaret Curley, a niece of decedent and residuary legatee.

*Thomas J. Armstrong*, for Hugh F. Curley and others, legatees.

WINGATE, S. It is not inappropriate that what will presumably be the final chapter in this case, which has achieved a certain fame (or notoriety) by reason of the legislative reversal of certain appellate determinations therein, should present for adjudication additional controversial questions relating to the operation of section 18 of the Decedent Estate Law.

The present issues concern the manner of devolution of the portion of the estate which does not pass to the widow " as in intestacy " (Dec. Est. Law, § 18, subd. 1) by reason of her exercise of her right of election.

The will, in item second, purported to give to the widow household furniture and an automobile and the family residence located at 150 Eightieth street, Brooklyn. The terms of this attempted bequest and devise were wholly nugatory. The personalty mentioned, which aggregated only $735 in value, became her property upon the death, by reason of the provisions of subdivisions 1 and 3 of section 200 of the Surrogate's Court Act (*Matter of Curley*, 151 Misc. 664, 672; affd., 245 App. Div. 255; affd., 269 N. Y. 548; *Matter of Jacobs*, 154 Misc. 362, 363; *Matter of Benjamin*, 150 id. 857, 858), passing to her by virtue of the terms of the statute (*Matter of Levine*, 157 Misc. 454, 455), consequently forming no part

of the estate of the testator subject to his powers of devolutionary direction. (*Matter of Curley, supra,* and authorities cited; *Matter of Goldman,* 158 Misc. 497, 498.) The real estate in question was held by the spouses as tenants by the entirety, with the result that complete ownership thereof passed to the widow on the death of the husband (*Bertles* v. *Nunan,* 92 N. Y. 152, 156; *Matter of Lyon,* 233 id. 208, 211; *Matter of Sitkin,* 151 Misc. 448, 453; *Matter of Appelbaum,* 146 id. 603, 604; *Matter of Collins,* 158 id. 798, 800) by virtue of the grant in the deed. (*Bertles* v. *Nunan,* 92 N. Y. 152, 156; *Matter of Weiden,* 144 Misc. 854, 861; affd., 240 App. Div. 716; revd. on other grounds, 263 N. Y. 107.)

Item third of the will directed the erection of a trust for the life benefit of the widow with a principal fund " which added to the value of the said premises 150-80th Street,  *  *  *  shall constitute one-half of the net value of my estate."

The remaining dispositive directions consisted of four general legacies, two of $100,000 and $10,000 respectively to a niece, May Curley, and a sister-in-law, Margaret Curley, and two of $5,000 and $1,000 respectively to St. Mary's Roman Catholic Church of Jersey City, and St. Matthew's Roman Catholic Church of Stroudsburg, Pa., and a residuary bequest " in equal shares to my nieces and nephews, children of my brothers, Michael J. Curley and Owen F. Curley, and in the event of the death of any of my said nieces or nephews before me leaving a child or children surviving me ' then the child or children ' to receive the share the parent would have taken if living at the time of my death." The residuary direction necessarily carried with it the disposition of the remainder of the trust of which the widow was given the life benefit.

Since no child or descendant of a child survived the testator, the determination that the widow was to be permitted " to take  *  *  *  her share of the estate as in intestacy," entitled her to receive " one-half of the net estate of the decedent, after the deduction of debts, funeral and administration expenses and any estate tax." (Dec. Est. Law, § 18, subd. 1, ¶ [a].) As the portion thereof allotted to her by the will was merely an equitable life estate in one-half of the net estate after deducting therefrom the value of the Eightieth street house, which was already hers by operation of law, it is obvious that an invasion of the property attempted to be given to others must be made in order to satisfy her statutory right. The first question presented is, therefore, as to the manner in which this shall be accomplished.

The diligence of counsel and the independent research of the court have disclosed that similar questions have been made the subject of reported adjudication in this State on only six occasions,

and never by an appellate court. Listed in chronological sequence these are *Matter of Devine* (147 Misc. 273), decided by Surrogate DELEHANTY of New York county; *Matter of Wishart* (149 id. 343), by this court; *Matter of Byrnes* (Id. 449), by Surrogate FOLEY of New York county; *Matter of Collins* (156 id. 783), by Surrogate TAYLOR of Orange county; *Matter of Mancinelli* (158 id. 605), by Surrogate HENDERSON of Bronx county, and *Matter of Fisher* (159 id. 190), also by Surrogate DELEHANTY.

Substantially all of these opinions draw attention to the theory of action expressed in subdivision 2 of section 18 of the Decedent Estate Law that "where any such election shall have been made, the will shall be valid as to the residue remaining after the elective share * * * has been deducted and the terms of the will shall as far as possible remain effective."

Concerning this portion of the enactment, Surrogate FOLEY writes: "This subdivision was purposely drawn in general terms with a deliberate design to vest in the courts an equitable authority over the apportionment of the charge, caused by the withdrawal by the surviving spouse." (*Matter of Byrnes*, 149 Misc. 449, 451.)

To which may be added the observations of Surrogate DELEHANTY: "It does not follow * * * that in determining the source of the intestate share, the terms of the will must be disregarded. The court has no authority to write a new will for a testator " (*Matter of Devine*, 147 Misc. 273, 276), and " That result should be sought which will preserve so far as is possible the testamentary scheme and the relative equities of the beneficiaries." (*Matter of Devine*, 147 Misc. 273, 277.)

Unfortunately, however, the line of demarcation between improper judicial testamentary fabrication and permissible salvage is an extremely tenuous one, and this court cannot but feel that in certain instances the line has been crossed in practical application.

Before attempting a concrete solution of the problems presented by the case at bar, it may be of assistance to analyze the facts and results in the cases noted, in an attempt to ascertain the theories which they apparently applied.

In *Matter of Devine* the estate was valued at $3,750. Of this sum $1,050 represented specific legacies. A trust of one-half of the estate was directed for the life benefit of the husband, with remainder to a daughter, if living, and if not, to a granddaughter. These directions were followed by gifts of general legacies aggregating $9,500, which were expressly deferred. The result attained upon effectuating the election of the husband was that he should receive his one-third intestate share outright, amounting to $1,250, leaving a balance of $2,500. From this the specific gifts of $1,050 were

then deducted. One-half of the remaining sum of $1,450, namely, $725, was deemed to be the adjusted principal of the trust, the remainder whereof was accelerated and paid to the daughter at once. The other $725 was allocated to the general legacies, $200 thereof being paid on account of a gift of $1,000 for cemetery care and the remaining $525, plus the income during the executorial period, prorated among the other general legatees, the face of whose gifts aggregated $8,500.

*Matter of Wishart* presented a will in which all assets of the decedent were specifically given, without any provision for the surviving spouse. It was held that the intestate share of the elector was to be impressed as a *pro rata* lien upon each gift, which lien might either be satisfied by the beneficiary or, in the event of his failure to exonerate the subject-matter of his gift, would be liquidated by sale of, or payment from, the subject-matter thereof.

The net estate in *Matter of Byrnes* aggregated $180,000. General legacies and trusts to the extent of $40,000 were given and the remainder was erected into a trust for the widow to continue during widowhood, with the remainder, on her death or remarriage, payable to such children of testator's brother as were living at the time such terminating event occurred and to the issue of any who had died. The determination required " an equitable apportionment and ratable contribution " " from residuary and general gifts alike;" decided that the remainder of the trust for the widow might not be accelerated, but that its payment over must await the happening of the stipulated conditioning event, with the income thereof payable to those presumptively entitled, from time to time, to the next eventual estate. The court further awarded to the electing widow her *pro rata* share of the income earned by the estate during the executorial period.

The terms of the will present in *Matter of Collins* are not fully stated in the opinion, although it appears that it contained at least one specific bequest, several demonstrative gifts and certain general legacies. The composite result attained is not wholly apparent, but it would appear that the learned surrogate applied the ordinary rules of abatement customary in cases in which there is a deficiency of assets for effectuating all of the gifts of a will (Cf. *Matter of Smallman*, 138 Misc. 889), since he observes (p. 788): " The legacy of this mortgage is, of course, specific and there will be no abatement, if at all necessary, until the general and demonstrative legacies are first exhausted." In conclusion, after an additional direction to the effect that the specific legatee should receive its gift unimpaired, he writes (p. 789): " the general legacies will first abate, as well as the deficiency in the demonstrative legacies over and above

the particular funds from which payable, and lastly, the demonstrative legacies, so far as their funds applicable thereto, will abate ratably as among themselves, if necessary."

*Matter of Mancinelli* concerned an estate of $3,000 which was erected into a trust for the widow for life with the remainder payable $3,000 to testator's brother Michael and the balance to his brother Carmello. The result attained was that the widow received her one-half intestate share of $1,500 outright, and Michael was awarded the remaining $1,500.

The terms of the will are not given in the opinion in *Matter of Fisher*. It is indicated, however, that the document gave general legacies and erected four trusts from the residue, one of which was for the widow. The opinion contains a general direction as to the manner of determination of the respective rights of the parties which reads (p. 193): " The formula here to be followed   *   *   * is to ascertain the net estate and then one-third thereof. This is fixed as the intestate share. Next, there should be ascertained the amount of the fund which would be available for the residuary trusts if the will as originally drawn were given effect. One-quarter of this amount is the intended capital of the trust for the widow. The whole of that one-quarter is to be applied in part satisfaction of the intestate share. Since it is less than the intestate share a balance must be found elsewhere. That balance will be taken ratably from the total gifts to others which are found in the general legacies and in the remaining three trusts having each a capital of one-quarter of the net residuary as intended under the terms of the will. By this method a minimum of contribution will be exacted from legatees other than the surviving spouse, the whole of the intended provision for the surviving spouse will be appropriated to her intestate share and the contributions to the balance of her intestate share will be on a parity among the other beneficiaries."

Since the terms of the trust of one-quarter of the residue are not given, it is, of course, unascertainable as to how the remainder thereof devolved. If it passed to others than the widow or her estate, the method of marshalling directed would obviously be unfair to them since the entire subject-matter of their gift was destroyed by total appropriation for solution of the rights of the widow. In view of the result attained in respect to the remainder rights in *Matter of Devine*, also decided by Surrogate DELEHANTY, the existence of such a condition would appear an inadmissible inference, and as thus viewed, the result appears to agree wholly with that of *Matter of Byrnes* in so far as the necessities of the case required exposition.

The results of this review indicate the attainment of the following results in the only reported cases applying the statute.

1. The intestate share is a primary charge on the entire net estate (unanimous).

2. Any benefits given to the electing spouse under the will are first to be applied in solution of the elective share (*Matter of Fisher*).

3. The gifts to others are then required to contribute to make up the deficiency in the sum necessary to pay the elector (unanimous).

4. In such contribution, any *express* testamentary statements of preference respecting other gifts will be effectuated (*Matter of Devine*).

5. Mere inferences respecting preference arising from the form of legacies as applied in ordinary cases of abatement for deficiency of assets, as of specific gifts over general legacies or general legacies over residuary bequests, will not be given weight (*Matter of Devine, Matter of Byrnes, Matter of Fisher; contra, Matter of Collins*).

6. Each beneficiary under the will must contribute *pro rata* to make up the deficiency in the elective share in the absence of express testamentary directions for preference (*Matter of Wishart, Matter of Byrnes, Matter of Fisher*, semble accord, *Matter of Devine; contra, Matter of Collins*).

7. If a trust has been created for the elector and its remainder is absolutely vested, so as to permit acceleration according to ordinary rules, the vested remainderman will be entitled to receive such remainder immediately on the solution of the obligation to the elector (*Matter of Byrnes, Matter of Mancinelli*).

8. If a trust has been created for the elector and its remainder is not absolutely vested so as to permit acceleration according to ordinary rules, the remainder may not be paid over at the time of the election, but must be held by the trustees until the occurrence of the stated event upon which the trust is limited, with income meanwhile payable to the persons presumptively entitled to the next eventual estate (*Matter of Byrnes; contra, Matter of Devine*).

9. The elector is entitled to a *pro rata* share of the income received by the estate during the executorial period (*Matter of Byrnes; contra, Matter of Devine*).

Whereas, as noted by Surrogate FOLEY in *Matter of Byrnes* (pp. 451, 452), it was undoubtedly the thought of the Commission at whose suggestion section 18 of the Decedent Estate Law was enacted, to invest the courts with considerable discretionary latitude in working out an equitable adjustment of the rights of the other testamentary beneficiaries upon the assertion and validation of the elective rights of the surviving spouse, the entire history of the

common law demonstrates the inevitability of a gradual settlement and crystallization of the basic principles applicable in this connection. Every decision on the subject must tend more and more to such eventual fixation of rules, wherefore it is of the most vital importance that each adjudication, particularly in the present early stages of the subject, be approached with the utmost caution.

The bases of decision applicable to cases in which ordinary abatement by reason of want of possession by the testator of sufficient assets to satisfy his testamentary directions, are here absent. In cases of this type the property of the testator is sufficient at the date of death, and the deficiency occurs merely by reason of the exercise by another of a discretionary right, in the absence of the assertion of which, the testamentary wishes respecting devolution would have been capable of complete fulfillment. The somewhat artificial rules of ordinary abatement, based as they are on presumed intention, become inapplicable in the face of the demonstrated fact that the testator, at the time of his death, wished certain of his unquestioned possessions to pass to designated persons. The law, set in motion by the elector, says, in effect, it is true that you owned this particular object or sum of money during your lifetime, but you may not pass it on to a person of your choice until a certain deduction therefrom is made not only for the good of the State, but for the satisfaction of the just rights of your surviving spouse.

Little if anything could be added to the convincing exposition of Surrogate FOLEY in *Matter of Byrnes* (p. 453) of the impropriety of absolving a general legatee from contribution to the elective share of the spouse at the expense of a residuary beneficiary. It is equally unreasonable to assume in this connection, that if a testator's net estate consisted merely of a diamond ring valued at $1,000, which he gave to one, and $1,000 in cash which he bequeathed to another, he would wish to have the latter gift wholly defeated and the former completely exonerated in the event that his spouse chose to contest his manner of disposal of his property. The maxim that equality is equity should be applied by Surrogates' Courts as in other tribunals of equitable jurisdiction.

Abatement, with its usual rules may, indeed, be applicable in the determination of the concrete amount ultimately payable to any testamentary beneficiary in cases of this type but only in the preliminary determination of what, if anything, the particular legatee would have been entitled to receive had the surviving spouse failed to exercise the elective right.

When this preliminary determination has been made, it is the opinion of this court that the affirmative of the principles herein-

before enumerated should apply to the usual case. Exceptions are conceivable, as where the *pro rata* abatement might utterly defeat the purpose of the gift. Such situations might arise if a demonstrated minimum sum for the attainment of a specified object had been given, as for the defrayal of the expense of a college education or the endowment of a hospital bed. Such cases may deserve special treatment when they arise.

There is, in reality, nothing new in the principle, since it has been applied for over a century in the effectuation of the statutory right of an afterborn child not mentioned in the will nor otherwise provided for. (R. S. part 2, chap. 6, tit. 1, art. 3, § 49, now Dec. Est. Law, § 26. See *Matter of Murphy*, 144 N. Y. 557, 561, 562; *Smith* v. *Robertson*, 89 id.. 555, 559; *Yung* v. *Blake*, 163 App. Div. 501, 503; *Matter of Griffin*, 159 Misc. 12, 17.)

Only in one particular is this court presently inclined to add to the enumeration of the usually applicable principles heretofore discussed, and this is rather a practical application than an addition. Where, as in the present case, a trust benefit is given to the electing spouse, the life benefit thereunder is a tangible gift which under the enumerated principle numbered " 2," should first be applied in satisfaction of the sum to which she is entitled. Where, however, as in the usual case, there is a gift of the remainder of the same fund to others, the entire capital value of the corpus may not be employed in the solution of her right to outright payment without a complete disregard and total destruction of the gift to the remaindermen. Their gift has a very real value and may not be destroyed if the principle of *pro rata* contribution is to be maintained.

This feature, however, furnishes no serious difficulty, since both in tax questions and in computations respecting excessive gifts to charity in violation of section 17 of the Decedent Estate Law, computations of value of life estates and remainders have long been familiar, based on probable duration of life as demonstrated in mortality tables. (*Hollis* v. *Drew Theological Seminary*, 95 N. Y. 166, 179; *Matter of Durand*, 194 id. 477, 488; *Matter of Bullard*, 130 Misc. 337, 338; affd., 225 App. Div. 734; affd., 253 N. Y. 562; *Matter of Brooklyn Trust Co.*, 92 Misc. 695, 704; modfd. on other grounds, 179 App. Div. 262; *Matter of Shiman*, 130 Misc. 716, 717; *Matter of Apple*, 141 id. 380, 386; *Matter of Miranda*, 151 id. 459, 462; *Matter of Schalkenbach*, 155 id. 332, 336; *Matter of Lord*, Id. 628, 631.)

In the case at bar, as in every other of this variety, the preliminary step is the ascertainment of the value of the net distributable estate which, it will be assumed, here amounts to $228,000. The next computation requires the ascertainment of the value of

the gifts made, on the basis which would have existed had no elective rights been asserted by the surviving spouse. Under item third the widow was given a life interest in a trust, the principal of which was one-half of the net estate (assumed to be $114,000) less the value of the Eightieth street house, which the testator had, without power of disposal thereof, attempted to devise to her. The value of this house was appraised in the transfer tax proceeding at $11,500 Deducting this sum, gives a net value of the principal of the widow's trust of $102,500 on the supposed facts. She received, however, merely a life interest in this fund. At the date of death, she was fifty-two years of age, with a resulting life expectancy under the American Experience Mortality tables (Rules Civ. Prac. rule 30) of nineteen and forty-nine one-hundredths years. Based on the computations of these tables, the value of her interest amounted to $57,215.50, wherefore the interest of the remaindermen in the trust was worth $45,284.50. From these figures, the value of the gifts under the will as executed is capable of exact ascertainment as follows:

| | | | |
|---|---|---|---|
| Widow | | $57,215 50, or 25.04% |
| May Curley | | 100,000 00, or 43.87% |
| Margaret Curley | | 10,000 00, or 04.40% |
| St. Mary's Church | | 5,000 00, or 02.20% |
| St. Matthew's Church | | 1,000 00, or 00.45% |
| Residuary legatees | | | |
|   Outright | $9,500 00 | |
|   R emainder | 45,284 50 | 54,784 50, or 24.04% |
|     Totals | | $228,000 00, or 100.00% |

By reason of the exercise and effectuation of her elective rights, the widow has become entitled to an outright payment of one-half of the net estate (assumed to be $228,000), or $114,000. Applying the second of the hereinbefore enumerated principles, that any benefit given by the will to the elector must first be applied in solution of the elective rights, the value of her life estate, namely, $57,215.50, must so be applied. Deducting this sum from the total $114,000, to which she is entitled, leaves a balance of $56,784.50, which must, under the sixth noted principle, be exacted *pro rata* from the gifts to others.

Eliminating the testamentary gift to the widow, it is found that the will as drawn purported to make gifts to others (on the assumed figures) of a total of $170,784.50. The concrete sums given and the percentages of their amounts to the total were:

| | | |
|---|---|---|
| May Curley | $100,000 00, | or 56.55% |
| Margaret Curley | 10,000 00, | or 05.86% |
| St. Mary's Church | 5,000 00, | or 02.92% |
| St. Matthew's Church | 1,000 00, | or 00.59% |
| Residuary legatees | 54,784 50, | or 32.08% |
| Totals | $170,784 50, | or 100.00% |

The amount of the deficiency in the widow's share, amounting to $56,784.50, must accordingly be supplied by these beneficiaries in the indicated percentages, namely:

| | Contribution | Remaining share |
|---|---|---|
| May Curley | $33,247 32 | $66,752 68 |
| Margaret Curley | 3,327 57 | 6,672 43 |
| St. Mary's Church | 1,658 11 | 3,341 89 |
| St. Matthew's Church | 335 03 | 664 97 |
| Residuary legatees | 18,216 47 | 36,568 03 |
| Totals | $56,784 50 | $114,000 00 |

Since the gift to the residuary legatees and remaindermen is absolutely vested (*Roosa* v. *Harrington,* 171 N. Y. 341, 353; *McLean* v. *McLean,* 207 id. 365, 375; *Matter of Gardner,* 140 id. 122, 129; *Matter of Young,* 145 id. 535, 537, 538; *Matter of Traver,* 161 id. 54, 57; *Carr* v. *Smith,* 25 App. Div. 214, 216; affd., 161 N. Y. 636; *Matter of Lamb,* 182 App. Div. 180, 186; affd., 224 N. Y. 577), the remainders of the trust may be accelerated according to usual rules (*Matter of Terwilligar,* 135 Misc. 170, 183, 184; affd., on opinion of this court, 230 App. Div. 763), and such acceleration should be done in this case in conformity with the noted principle numbered " 7."

The sole remaining contested question concerns the right of the widow to receive income on her elective share. It was so held, as noted, in *Matter of Byrnes,* and this court is in complete agreement with the logical and convincing exposition of Surrogate FOLEY in this regard therein contained. The intention of the statute is wholly patent that as to a successful elector, the will is wholly nugatory and that as to him the estate passes " as in intestacy." (Dec. Est. Law, § 18, subd. 1.) The right of election when validated relates back to the moment of death with the result that from that moment the elector is absolute owner of the ultimately distributable sum although the right to immediate payment of such sum is postponed for the convenience of the estate and as security for the

potential rights of creditors and others having prior claims. Being, therefore, held merely as security and having been found unnecessary of use for this purpose, it results that the true owner is entitled to all of the incidents of ownership, including accretion, from the moment when such ownership began. Since in the present case the elector was entitled from the beginning to one-half of the net distributable estate, she must receive her *pro rata* share of the income earned thereby from the date of death.

The only remaining question concerns the fees of the attorneys for the executors. Since all parties have assented to a charge of $25,000 in this connection, the court will approve such payment.

It has been stated that the executors will find it necessary to file a supplemental account by reason of the receipt of additional principal and income. This will of course require a recalculation of the sums due the various parties, in which the principles hereinbefore outlined will be applied. When this has been accomplished, a decree may be presented in conformity herewith.