Catherine B. KILCOYNE et al.,
Appellants,

v.

James F. REILLY, Executor of the Estate of Emma F. Shepley, deceased, et al., Appellees.

No. 13668.

United States Court of Appeals
District of Columbia Circuit.

Argued May 22, 1957.

Decided Aug. 8, 1957.

As Amended Sept. 24, 1957.

Petition for Rehearing In Banc Denied
Sept. 24, 1957.

Mr. John E. Powell, Washington, D. C., with whom Messrs. Arthur P. Drury and John M. Lynham, Washington, D. C., were on the brief, for appellants.

Mr. Harrison T. Slaughter, Washington, D. C., for appellee Anne C. Reilly.

Messrs. James F. Reilly and Eugene B. Sullivan, Washington, D. C., entered appearances for appellee James F. Reilly, Executor.

Mr. William H. Clarke, Washington, D. C., entered an appearance for appellees Anne Beach Ritchie and Clarke Beach.

Mr. P. Bateman Ennis, Washington, D. C., entered an appearance for appellee Mildred C. Cohan.

Messrs. Albert Brick and Samuel Intrater, Washington, D. C., entered appearances for appellee Belmar H. Shepley.

Mr. Stanton C. Peelle, Jr., Washington, D. C., entered an appearance for appellee The Washington Home for Incurables.

Before WILBUR K. MILLER, BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Emma F. Shepley died in August 1955, leaving an estate consisting of stock and secured notes valued at about $124,000. Her husband, Belmar H. Shepley, survived her; there were no children. The District Court admitted to probate a longhand will dated June 25, 1955 by which the husband was bequeathed a life interest in the entire estate. Upon his death ten named legatees were to receive certain personal effects and cash legacies totaling $53,000, the balance of the estate "to be divided among the children of my [deceased] brother Albert E. Berry." [1]

The surviving husband renounced the provisions of the will and elected to take under the statute which granted him one-half of the net estate.[2] The executor petitioned the District Court for instructions as to the effect of the election upon the bequests contained in the will.

Appellants, the residuary legatees and heirs-at-law of decedent, claimed that the renunciation so distorted the testamentary scheme that the altered distribution no longer effectuated the testatrix' wishes. In the District Court, and now here, appellants urge in the alternative (1) that the distribution of the whole estate should be made as though the testatrix died intestate, or (2) that the husband's one-half share be charged wholly against legatees other than appellants or ratably against all the legacies made in the will, or (3) that the life estate renounced by the husband, i.e., one-half of the estate remaining after he receives his elective one-half, be sequestered until the husband's death with income therefrom paid to appellants for diminution of their remainder share.

The District Court, upon the motion of the executor,[3] granted summary judgment, and ordered the executor to (1) deliver to the surviving husband one-half of the net assets of the estate, (2) deliver and pay to the specific and general legatees the items and sums bequeathed to them in accordance with the will and (3) divide the residuum among

---

1. There are five residuary legatees, one of whom is also recipient of a general legacy.

2. D.C.Code 1951, § 18–211. See also D.C. Code 1951, § 18–704.

3. The executor's motion requested, in the alternative, that he be instructed (1) to satisfy the pecuniary legacies in full, dividing the residuum among the residuary legatees, or (2) to reduce each of the pecuniary legacies by 50%, converting the remaining 50% into the residuum for the benefit of the residuary legatees. All parties in interest agreed there were no material issues of fact and hence that a summary judgment was proper.

the residuary legatees. The residuary legatees appeal.

In support of their first contention appellants rely on Pascucci v. Alsop, 79 U.S.App.D.C. 354, 147 F.2d 880, certiorari denied, 1945, 325 U.S. 868, 65 S.Ct. 1406, 89 L.Ed. 1987, in which this court held that marriage and birth of issue subsequent to execution of a will operated as a revocation of the will. But there the "change in circumstances" occurred *before* the will became operative and was, of course, known to the testator. Neither the will nor the surrounding circumstances warrant the inference in this case that decedent would have preferred intestacy to the adjustment of the legacies caused by the husband's election.

The question to be resolved, therefore, is whether the general rules of abatement control an alteration affecting one-half of the estate under a will executed two months before death and operating to reduce the residue designated for next of kin from $50,000 to $60,000 to between $4,000 and $7,000.

■■■■ The general rules governing the abatement of legacies were developed to meet the situation where the net distributable assets of a decedent were insufficient to satisfy in full the testamentary gifts. This general rule provides that residuary legacies abate first, followed by general legacies and then specific and demonstrative legacies, which give way together ratably. This order of abatement rests on an arbitrary presumption of law as to the probable intent of the testator where the will does not anticipate the necessity for abatement.[4] The present validity of an assumption that testators tend to use specific and general legacies as a means of providing for those to whom or for whom they desire a priority is questionable. While there are few absolutes in this area, we can notice judicially, if we need, that contemporary wills more often than not use the residuary clause to carry out the most important provisions. It is impossible to say flatly that any pattern of disposition is controlling; each will must be examined in the light of the entire background and fact situation and only the most general guides can be formulated.

Some jurisdictions, notably New York, have attempted to solve this problem by applying more flexible and equitable standards, keyed essentially to a *substantial* distortion of the testamentary scheme caused by an election hostile to the interests of the named beneficiaries. A leading case in this regard is In re Byrnes' Estate, 1933, 149 Misc. 449, 267 N.Y.S. 627, in which a net estate of $180,000 remained after expenses and debts. After providing legacies and trusts of $40,000 to three non-profit institutions, the will bequeathed the residue to the widow in trust for life or until remarriage. Under the terms of the residuary trust the remainder, upon the death or remarriage of the widow, went to children of the testator's brother living at the termination of the life estate, or their issue. The widow effectively elected to take under the statute. Her election depleted the net estate by one-half, leaving only $90,000 in place of an anticipated $140,000 balance after satisfaction of the $40,000 in charitable gifts.

The New York court was confronted with the question of whether the widow's elective share of $90,000 should be charged wholly out of the residue or equally apportioned out of the cash legacies, charitable trusts and the residue. The court adopted the second alternative: "By apportioning the withdrawn share [of the surviving spouse] against all the beneficiaries, the general plan of the will may be, to a great extent, preserved and the balance maintained between the respective preliminary and residuary beneficiaries."[5]

4. Cases have applied the conventional order of abatement to satisfy the elective share of a renouncing spouse upon the theory that "residuary" contemplates that which is left after payment of all other bequests. See cases collected in 1954, 36 A.L.R.2d 299.

5. In re Byrnes' Estate, 1933, 149 Misc. 449, 267 N.Y.S. 627, 631.

The relevant New York statute[6] provided: "Where any such election [by a spouse] shall have been made, the will shall be valid as to the residue remaining after the elective share provided in this section has been deducted *and the terms of the will shall as far as possible remain effective.*" (Emphasis added.) While no comparable statute exists in this jurisdiction, it seems clear to us that the New York statute was simply declaratory of the broad equitable powers of a court dealing with the construction of wills.[7] Courts have always endeavored to ascertain the probable intention of the testator and to carry that into effect with a minimum disturbance to the general testamentary plan. The New York statute, at most, represents a negation in certain circumstances of the arbitrary presumptions (1) that the average testator prefers specific and general legatees to those mentioned in the residuary clause and (2) that a testator is presumed to contemplate and provide for a renunciation by the spouse. Instead, the courts, using inherent equity powers, are authorized to shape a presumption providing for a more equitable adjustment of the estate. Of course, even this rule of abatement gives way where the will itself indicates its application would be inappropriate or contrary to the testator's intentions.[8]

Some state statutes now contain more explicit provisions for the apportionment of a depletion resulting from reduction of the distributable estate as a consequence of an election by a surviving spouse.[9] Even under such statutes, however, courts have recognized that "Irrespective of statute, it is a general rule applicable to cases of this type that a widow's election to take against the will defeats the testator's intention in part and the court will try to ascertain his primary intention and carry it into effect as nearly as possible." In re Maske's Estate, 1952, 243 Iowa 1394, 55 N.W.2d 474, 476, 36 A.L.R.2d 285.

Recourse to the history of the development of the general rules of abatement of legacies shows that they were evolved by courts over a period of time to deal with practical problems. The same source of judicial power by which courts formulated what might be called general rules of abatement of legacies empowers us to deal with the problem here presented. The testatrix in this case prepared her will in longhand, apparently with the benefit of a will professionally drawn a few years prior. The dispositive provisions of the two wills are nearly similar,[10] the testatrix making *certain cash legacies and bequeathing the remainder to appellants.* Such inferences as can be drawn from this comparison support the conclusion that testatrix at all times intended the appellants to be the recipients of a substantial portion of her estate. The fact that appellants were her next of kin also supports this conclusion.

6. New York Decedent Estate Law, McK. Consol.Laws, c. 13, § 18, subd. 2.

7. "This subdivision was purposely drawn in general terms with a deliberate design to vest in the courts an equitable authority over the apportionment of the charge, caused by the withdrawal by the surviving spouse. The alternative of attempting to draft and impose meticulous rules applicable to every estate was rejected by the [decedent estate] commission. By the equitable plan adopted, it was believed that just treatment of all the beneficiaries named in the will would be secured. By making the method of contribution elastic and based upon equitable principles, injustice and discrimination against any of the beneficiaries of an estate would be avoided." In re Byrnes' Estate, supra, note 5, 267 N.Y.S. at page 630.

8. See cases cited at 1954, 36 A.L.R.2d 303.

9. See, e. g., section 633.14 of the Iowa Code (1950) I.C.A.: "All claims which it becomes necessary to satisfy, and all amounts necessary to be paid from the estate of a testator in disregard of or in opposition to the provisions of a will, shall be taken ratably from the interests of heirs, devisees, and legatees."

10. In the earlier will testatrix did not leave her husband any part of the estate "feeling as I do that he is amply provided for."

Furthermore the will was prepared only two months before testatrix' death. Testatrix must have been aware that her assets were sufficient to satisfy all administration expenses and still insure appellants a sum in excess of $50,000. It is equally plain that by reason of the surviving spouse's election the distribution affirmed by the District Court's summary judgment operates so that there will be substantially less than $9,000 available for the residuary legatees. That this is a substantial distortion of the testamentary plan there is no doubt. The presumption that a testator realizes the spouse may elect against a will carries little weight where, as here, decedent prepared her own will and had no reason to believe that her husband, then in his 80's, would renounce a life estate in the whole and elect to take one-half absolutely.

Considering these circumstances we adopt the rule applied by the New York courts and hold, in this case, the general pecuniary legacies should abate pro rata with the residuary legacies. We think this is the sound and equitable approach, and one which more nearly conforms to the presumed intention of the testator, where the diminution of assets in an estate results (1) from election by a surviving spouse (2) in circumstances where this clearly produces a substantial distortion of the testamentary scheme (3) as it applies to blood relatives or others similarly situated who have a natural claim on the bounty of the testator, (4) where there is no discernible evidence that the election was foreseeable and (5) where there is no contrary intent manifested in the will as to the order of abatement and none appears from the circumstances of the parties.

▉ We next come to the specific non-pecuniary legacies. In this case they are a ring and a silver dish of nominal value only but sometimes such legacies are of substantial value and represent a significant proportion of a whole estate. There is no logical basis for treating these legacies in any way different from general pecuniary legacies and in the application

of the above rule a charge in the nature of a burden or lien attaches to the specific legacy and this "must be satisfied either from the subject matter of the several gifts or by exoneration by the donees, in a manner identical with that practiced in respect of any other lien. * * *." In re Topazio's Estate, 1940, 175 Misc. 132, 22 N.Y.S.2d 847, 851; 1954, 36 A.L.R.2d 302.

Appellants also urge that the remaindermen's shares should not be accelerated and that the renounced portion of the estate, i. e., the husband's life interest, should be sequestered for the benefit of appellants during the life of the husband. "It is not possible to lay down a hard and fast rule of acceleration applicable under all circumstances to the distribution of estates wherein the [spouse] has declined to take under the will. But it may be said that it is the duty of courts to accomplish as near as may be done equitably the same result between the beneficiaries as would have resulted from distribution of the estate in accordance with the terms of the will." In re Povey's Estate, 1935, 271 Mich. 627, 261 N.W. 98, 99–100, 99 A.L.R. 1183. See also McDonnell v. McDonnell, 1940, 72 App.D.C. 317, 114 F.2d 478.

▉ Under D.C.Code, 1951, § 45–812, the pecuniary and residuary legatees took a vested interest in the portion of the estate bequeathed them. Absent manifestation of a contrary intent, it is generally accepted that "Where the remainder is vested, in title and interest, as of the date of the death of the testator under the terms of the will, acceleration is desirable and should be enforced." In re Byrnes' Estate, supra, 267 N.Y.S. at page 632. See also Mayhew v. Atkinson, D.C.D.C.1950, 93 F.Supp. 753. Moreover, where, as here, the pro rata abatement will remove the substantial distortion among the dispositions, the equitable considerations favoring sequestration disappear, and the attendant expenses and delays are avoided. See Restatement, Property § 234 (1936).

The case is remanded for modification of the judgment to conform with a dis-

tribution not inconsistent with our holding. This does not alter the District Court's order accelerating the remainder interests.

Affirmed in part; reversed in part and remanded.