In the Matter of the Estate of CHARLES P. GOLDSMITH, Deceased.

Surrogate's Court, New York County, November 8, 1940.

*Louis S. Posner* [*Edmond N. Cahn* of counsel], for Dorothy Goldsmith, individually.

*Gustave Simons*, for Dorothy Goldsmith, as executrix, etc.

*Pfeiffer & Crames*, for May Gribben, as executrix, etc.

*Phillips, Mahoney & Fielding*, for May Gribben, individually.

*Victor Kaufmann*, special guardian for infants.

*McLaughlin & Stern* [*Stephen S. Bernstein* of counsel], for Madeleine G. Morell, Marguerite C. Gale and Marjorie R. Poll, objectants.

DELEHANTY, S. By prior decision (174 Misc. 270) the court held valid an election by the widow of deceased to take against his will. By a separate decision (N. Y. L. J. Dec. 23, 1939, p. 2292) the court also held that certain legacies given to the daughters of deceased on condition that they transfer to their stepmother the equity in certain land were preferred because the condition was performed.

The problem now is to determine the source from which the widow's elective share is to be paid. The will provides for legacies of $2,500 to each of three sisters of deceased. It provides for a legacy to a trusted employee of deceased in the sum of $20,000. It provides for legacies to the daughters (these have been held preferred) in the aggregate of $30,000. It then directs that the residue be held in trust. One-half of the residue is directed to be held in trust for the widow. The other half is further subdivided and held for the benefit of deceased's children respectively. The amount of the residuary trust for the widow is substantially less than the intestate share. The difference between the capital of the trust for the widow and the total of the intestate share must be found. The widow has stipulated with the other parties in interest that the equity in the land conveyed to her by the daughters of deceased is worth the sum of $1,750 and that the value of such equity shall be deemed a payment to her of a portion

of her intestate share. The court has not been asked to make any ruling and in fact makes no ruling as to whether the value of this equity is properly in the problem before the court. Since no person other than the widow of deceased is adversely affected by this proposed credit against the intestate share the court will deal with the problem on the basis established by the stipulation.

The first question presented is whether or not the daughters of deceased may escape any levy upon their legacies because of the prior proceeding which determined that their legacies were preferred. The court holds that they may not resort to an estoppel in their favor by reason of the former decree of the court. In the proceeding then before the court the sole question litigated was the status of the legacies to the daughters as contrasted with legacies to others. No issue was raised respecting the question now before the court. It had not even been formulated at that time. The daughters of deceased further argue that they may not be assessed because in fact they have been paid in full under the prior decree of the court. This objection is without validity since any person who " has received estate assets in excess of the amount determined on the settlement of the account to be lawfully due him " may be required to refund the excess by decree in the accounting proceeding. (Surr. Ct. Act, § 267.)

The question of contribution must be considered on its merits without regard to prior rulings on unrelated issues. As stated, three sisters, an employee and the daughters of deceased collectively received $57,500 in general legacies; and one-half of the residuary is held in trust for others than the widow. The contribution must be found in some or all of these shares if the other one-half of the residuary which by statute is appropriated *in toto* as part of the intestate share be disregarded. Deceased died in March, 1938. While the election of the widow was not made until much later, the rights of the parties became fixed as of the date of death and so the text of section 18 of Decedent Estate Law as it existed at date of death must provide the rule for contribution.

As the statute then existed, paragraph (a) of subdivision 1 of the section defined the intestate share. Paragraph (b) of that subdivision directed that the sum of $2,500 payable absolutely under that subdivision should come out of the principal of the trust fund for the spouse. Paragraph (c) of that subdivision provided that the intestate share when less than $2,500 canceled all provisions in the will for the spouse and was payable in cash. The source of the payment (except by cancellation of the spouse's legacy) is not prescribed. Paragraph (d) of that subdivision contains only a definite bar to *any* election if the state of facts exists which is

outlined in the subdivision. Paragraph (e) of that subdivision provides for a case where the benefits accruing to the spouse under the will give him or her less than $2,500 in value outright and in addition a provision in trust which (taken together with the outright gifts) equal or exceeds the intestate share. The spouse in such circumstances is given the right to take in cash the difference between the value of the outright gifts and $2,500. The statute in such circumstances directs that the cash balance so payable is to be deducted from the principal of the trust fund for the spouse.

When paragraph (f) of subdivision 1 of section 18 is reached, however, we find that there is no express statutory direction as to the source of the cash payable to the spouse. It is by this paragraph that the rights of the surviving spouse of deceased are here to be measured. The paragraph says that where the aggregate of outright gifts and gifts in trust is less than the intestate share the surviving spouse may take in cash " the difference between such aggregate and the amount of the intestate share." The only words in the paragraph which even remotely refer to the source of the " difference " thus payable to the spouse is found in the final phrase which says " the terms of the will shall otherwise remain effective."

The will of a deceased person could make express provision for a payment due under paragraph (f). It could make provision implicitly by so directing complete payment of one or another legacy in all events as to require the court to say that the contingency of an election was within the contemplation of deceased. If a will is susceptible of a construction along these lines, then the intent of the testator should govern. But where the will as a whole shows that the testator had no thought of an election, but on the contrary drew his will on the assumption that it would be completely observed in all its provisions, there is no " testamentary intent " which is applicable to the situation. It is a contradiction to say that a testator intended that his will should operate as he drew it and at the same time to say that there is room for finding an intent that it should operate differently than as he drew it. While every testator who drew a will after August 31, 1930, is deemed in law to have known that an election could be made against his will, it is contrary to the common experience of probate courts to say that in general wills are drawn in the expectation of an election against them. Only in the rare cases where such expectation of an election is declared by the testator himself or where he took the precaution to obtain a waiver is there factual basis for the idea that a will was drawn with any thought of election in mind.

There being found in the will of this deceased no "testamentary intent" which relates to the source of payment of the intestate share the court must apply ordinary principles of equity in finding the source. That means that the contribution should be a ratable contribution. A ratable contribution normally means a contribution by everybody in accordance with the benefits received. It is a contradiction, however, to say that the widow must contribute to her own intestate share out of the trust fund for her since that would operate to diminish her intestate share, the trust fund for her being counted *in toto* as a part payment on her intestate share. For the reason that the trust fund for the widow is applied wholly as such part payment the interests of the remaindermen in that share are immune. There are insurmountable practical difficulties in any attempt to make the remaindermen of the widow's trust contribute. If the widow's life estate were valued as of the death of deceased and the remainder interest in the residuary trust for her as eventually set up were then computed and that residuary interest were then deemed to be part of the general body of funds contributing to the payment of the intestate share, it would follow either that the remaindermen would be compelled to pay their contributions out of their own pockets or that the contribution would be taken out of the capital of the trust (thus diminishing the widow's income and making her contribute doubly) or the contribution of the remainder men would have to be deemed frozen in the trust out of the reach of the widow practically though theoretically paid to her. The statutory appropriation of the whole of the widow's trust (including both life use and remainder interest) to the *pro tanto* extinguishment of the intestate share forbids any re-use of the same fund in any plan of payment of the balance.

Thus the funds which are subject here to contribution to the balance of the intestate share are the trust funds set up out of the remaining half of the residuary and the general legacies. In the term "general legacies" the court includes the legacies to the daughters of deceased. While the tenor of deceased's will was held by the court to be such as to give the daughters of deceased a preference in their relations with other general legatees it is clear that deceased had no affirmative intention to grant a preference to his daughters. Just as in legal theory he was deemed to know the statutory rule which gave his widow the right to elect, he was also deemed to know the rule of law which operated, for reasons of which he was no doubt actually ignorant, to give his daughters a priority as respects other legatees. Nothing in deceased's will warrants the grant of an exemption of the daughters' legacies from the

burden of contribution. That burden is imposed by the exercise of a statutory right. The rule which gave to the daughters of deceased a preference has never been extended to the point now sought by the daughters of deceased. It should not be extended into a field which could not have been within the contemplation of the courts which prescribed the rule. The duty of contribution to the intestate share of the widow is an obligation common to all of the persons who received benefits under the will. Whatever may be their rights otherwise as among themselves they are obliged to contribute ratably out of their shares to the discharge of what is in effect a lien upon all the shares. In the cases of the residuary trusts other than that for the widow the contribution is to be paid from the capital of the respective trusts. Such payment will operate as a contribution by the income beneficiaries therein through loss of income and will constitute a contribution by the remaindermen therein through diminution of the capital eventually payable to them. The fact that the remaindermen in the widow's residuary trust will suffer no corresponding capital diminution is due to the operation of the statutory rule which appropriates the whole of the widow's trust as part payment of her intestate share. The statutory rule is in some respects arbitrary. For instance under paragraph (b) a limited right is given to take only the sum of $2,500. The statutory rule directs that this be deducted from the principal of the trust fund for the spouse and thus imposes the sole contribution upon the remaindermen of that trust. In such case all other beneficiaries under the will are relieved from any contribution. In the same manner the remaindermen of a trust for the spouse are compelled to make the entire contribution under paragraph (e). The court is bound by the statutory rule for contribution in the area within which it operates. Outside that area the court may apply a rule of equitable contribution.

Argument is made that the residuary trust for the widow and the residuary trusts for the children of deceased should be deemed accelerated by reason of the election. The court holds that there is no acceleration. As to the widow's trust it is deemed to be a payment of the intestate share in an amount equal to its capital value. The statute itself plainly means that a trust which is so regarded as part of an intestate share shall remain intact and undisturbed. The fact that the trusts set up for the children are in part impaired by reason of the capital contribution therefrom in the making up of the intestate share is not a reason for destroying the trusts. All that the election has effected is to diminish the capitals of these trusts. They remain operative in all other respects.

There was some suggestion on the argument that the court should construe the will in relation to the trusts. This is an executors' accounting and no question of construction is involved in it since the immediate question is only one of the amounts to be placed in trust.

Later in this decision rulings are made on all open questions that affect the deductions from the gross estate. On a basis of these rulings the value of the residuary can be ascertained and thereupon the amount of money to be contributed by the assessed beneficiaries can be ascertained. Because of the stipulation of the widow there is an item of $1,750, extraneous to the estate proper, which must be taken into account eventually when payment of the widow's intestate share is made. The contributions, however, are to be computed on the basis of the true estate excluding the $1,750. When the true estate available for payment of legacies including the residuary trust for others than the widow of deceased is ascertained, the ratable contributions to the intestate share by the general legatees and by the respective trust capitals for the children of deceased are to be computed. Under the stipulation between the daughters of deceased and the widow the former are deemed to have paid to the widow $1,750 and the computed contributions of the daughters out of their legacies are to be deemed satisfied to the extent of $875 by reason of the credit provided for in the stipulation. The decree will provide that refund to the estate of the balance of their respective contributions shall be made by the daughters of deceased respectively.

A further question is presented respecting the allowance of interest on legacies. This deceased had only one substantial asset — his business operated under a corporate form. Certain insurance payable to the widow of deceased was changed by deceased and made payable to his estate at a time when he was seeking financing for himself and his corporation. Nominally it could be said that the insurance moneys were chargeable first with the payment of legacies and that the primary obligation on the notes held by the bank creditor of the corporation could have been discharged by the assets of the corporation. But we are not here concerned with the separation of these legal entities. We are here seeking to know what this deceased intended by a will written at a time when plainly his identity with his business made the totality of his assets, whether corporate or individual, a single fund for testamentary purposes. This being the correct viewpoint from which to inspect the provisions in the will, it is patent that the scheme of the will envisaged a distribution to legatees only after a liquidation of the business in respect of which he committed wide powers to his

executors. The direction in the will that a trusted employee be retained at a substantial salary emphasizes the expectation of deceased that the liquidation would be a matter of considerable delay. In these circumstances the court holds that interest on the legacies to the daughters of deceased began to run only from the date of final liquidation of the corporate business.

Separate application is made by objectants for an allowance to them of the expense of accountants employed by them in making examinations into the books and records of the corporation and of the estate. The court disallows this claim. It has not been shown by the proceedings in the accounting that any material facts were withheld from the books of deceased or the books of the corporation. These books were made available on court order. The employment of accountants by objectants was for their convenience and they should pay the cost themselves.

Counsel who have appeared for the fiduciaries in this estate ask compensation. It should be said preliminarily that much of the time of counsel actually spent in the estate affairs was occasioned by lack of co-operation of the parties. To a substantial degree that lack of co-operation was occasioned by the methods pursued by the original counsel for both fiduciaries. That factor has been taken into account in fixing the allowance to him. The court has fixed and determined the total sum of $5,000 as the amount reasonably payable to him for his services to and including the entry of the decree. Against this amount he has received $1,500. His disbursements are allowed in the sum of $33.43 in addition. No bill of costs is to be taxed by him. The other petitioning counsel is allowed the sum of $5,000 together with disbursements of $21.41. This allowance covers all services to and including the entry of the decree. No costs are to be taxed by him.

All questions which arose under the objections were disposed of either by withdrawal of the objections or by stipulation in writing respecting their disposition or by agreement made in open court and stated on the record of the proceeding. On the basis of such disposition of the objections and on the basis of the rulings herein and heretofore made, a decree may now be submitted on notice settling the account.