In the Matter of the Intermediate Accounting of ARANKA KLEIN, Formerly ARANKA ROSENZWEIG, as Trustee under the Will of SAM ROSENZWEIG, Deceased. In the Matter of the Accounting of ARANKA KLEIN, Formerly ARANKA ROSENZWEIG, as Executrix of SAM ROSENZWEIG, Deceased. ERICA LINDENSTRAUS, Appellant; EMANUEL ROSENZWEIG, Respondent.

First Department, July 8, 1965.

*Murray A. Gordon* of counsel (*Edmund A. Rosner* with him on the brief), for appellant.

STEVENS, J. These are appeals by a legatee, the daughter of Sam Rosenzweig, deceased, from decrees entered June 25, 1963, settling the account of Aranka Klein, formerly Aranka Rosenzweig, as executrix of the last will and testament of Sam Rosenzweig, deceased, and from a portion of the decree which settled the account of such person as a trustee.

The decedent, husband of the trustee executrix, died July 2, 1953. In paragraph Second of his last will and testament,

executed February 13, 1946 and admitted to probate July 27, 1953, he provided that certain personal effects should be given to his wife Aranka Rosenzweig, and in paragraph Third he bequeathed the sum of $10,000 to his brother, Emanuel Lagstein, also known as Emanuel Rosenzweig. Under paragraph Fourth of the will it was provided that the residue and remainder of his property was to be given to his trustees in trust to manage, invest, etc., and collect and pay the net income in the following manner: 15% but not less than $350 per month to his brother, Emanuel Lagstein (as successor in interest to decedent's father) for life or until the earlier death of the testator's daughter, Erica Rosenzweig (now known as Erica Lindenstraus). In the event of the death of Emanuel the 15% was to be held in trust for Erica. This portion of the will and the decree upholding such provision is not under attack here. However, paragraph Fourth provided further "Eighty-five per cent thereof to my wife, Aranka Rosenzweig, and to my daughter, Erica Rosenzweig, in the proportion of fifteen per cent, but not less than Three Hundred ($300.00) Dollars per month, for my said wife, and seventy per cent, but not less than Three Hundred ($300.00) Dollars per month, for my daughter for and during the term of their natural lives, and upon the death or remarriage of my said wife, her interest in the trust shall terminate and shall be payable to my brother, Emanuel Lagstein; and upon Erica Rosenzweig attaining the age of thirty years, I direct my trustees to pay over to her outright one-half of her then share in the principal of said trust, continuing thereafter to pay her the income of her remaining half share during her lifetime or until she shall attain the age of thirty-five years, and upon her reaching the age of thirty-five, I direct my trustees to pay over to her outright, the balance of her share of said trust." The intention was expressed that the trust was to be measured by the life of Erica Rosenzweig. Erica was 20 years old in 1953 at the time of the testator's death, so that she is presently approximately 32 years of age and under the provisions of the will one half of her share in the principal of the trust could have been paid over to her.

On September 30, 1953 the widow filed a notice of election to take against the will. That notice was held valid. On or about June 22, 1954 the widow filed a petition for construction of paragraph Fourth of the will, particularly that part naming Emanuel as successor in interest to the widow. The construction sought also dealt with the question of whether certain payments under a contract made by the testator in his lifetime but received subsequent to his death were principal or income or

both. With that phase of the matter we are not here concerned. However, with respect to the possible successor interest of Emanuel and the exercise of the widow's right of election the court stated: " The exercise of her right of election as effectively *terminates* her interest in said trust as the conditions prescribed by testator [cases cited]. Ordinarily undisposed of income is payable to the person or persons entitled to the next eventual estate (Real Property Law, § 63). Here, however, there is no need to invoke the statute, since testator himself has identified the person entitled to take. The court holds that testator's brother is entitled to the share of the income bequeathed to the widow and terminated by her recourse to section 18 of the Decedent Estate Law. Computation of the widow's share of the estate and contribution thereto by the other interests under the will will be determined in the subsequent accounting proceeding." (*Matter of Rosenzweig*, 4 Misc 2d 142, 144, affd. 7 A D 2d 969.) A decree in accordance with the decision was entered subsequently. The net estate at the date of death was calculated at approximately $311,892.80, on which the widow's elective share would be one third or $103,964.27. However, on the accounting a claim of the widow against the estate was allowed which with interest totaled $62,190.53. This reduced the net estate and also reduced the widow's elective share. Similarly the net value of the residuary estate subject to the provisions of paragraph Fourth of the will was reduced. On or about January 28, 1960 the widow, as executrix and trustee, filed her petition for a voluntary accounting and settlement of her final account as executrix and her intermediate account as trustee. In this petition she asserted that the income of the trust under the will had not been sufficient in the past and would not be sufficient in the future to cover the minimum income granted by the will to the trust beneficiaries and that the value of the incomes involved should be computed based upon the granted minimum income as maximum. On such a basis the commuted value of the widow's annuity under paragraph Fourth was calculated at $49,716. She urged that by the application of the commuted value of her interest to her elective share there would be no surplus of assets from which Emanuel could receive any payments as successor in interest to her. No payment had been made to Emanuel as such successor in interest since the entrance of the decree on January 26, 1956 which declared that he was entitled to succeed to the interest of the widow.

Objections were filed to the accounting by Emanuel, a hearing was had, at the conclusion of which the Surrogate held that the

decision of Mr. Surrogate Collins in 1955 in *Matter of Rosenzweig* (*supra*) established the right of Emanuel as successor in interest to the widow to receive 15% of the income of the trust with a monthly minimum of $300 per month for life. By the opinion the elective share of the widow was to be apportioned pro rata between the general legacy to the brother and the principal of the residuary trust. The decree settling the trustee's intermediate account was in accordance with such determination. Such payments were to be for the period beginning July 2, 1953, and were to be separate and apart from the payments to Emanuel as successor interest to the father of the decedent.

On this appeal, taken by the daughter Erica, the attack is not upon the payments to Emanuel as successor to the father's interest, but upon the direction for payments to Emanuel as successor in interest to the wife. It should be pointed out that the net residuary estate will not produce sufficient income to provide the three separate incomes required by the will without the necessity of invading the corpus of the trust.

Appellant urges that it was error to direct the payment of 15% to Emanuel as successor to the widow, that the prior ruling of Surrogate Collins was not *res judicata* as to the contributions to be made by the beneficiaries in satisfaction of the widow's share, and that contributions to the widow's intestate share should not have been apportioned on a prorata basis among all the beneficiaries; that the testamentary bequest made for the benefit of the widow, who elected to take against the will, should be applied first to the satisfaction of that elected share, and that by so doing the widow's share of the estate to which Emanuel would have succeeded would be exhausted.

In the disposition of any estate, when ambiguities exist whether from deficiencies or lack of clarity in language, or, as here, by the exercise of a right by a legatee, unforeseen by the testator save in contemplation of law, the constant objective is to preserve as far as possible the testmentary scheme and the relative equities of the beneficiaries. In fact, the statute provides " Where any such election shall have been made, the will shall be valid as to the residue remaining after the elective share provided in this section has been deducted and the terms of the will shall as far as possible remain effective " (Decedent Estate Law, § 18, subd. 2).

The decision of 1955 (*Matter of Rosenzweig*, 4 Misc 2d 142, affd. 7 A D 2d 969) and the decree entered January 26, 1956, in accordance therewith, insofar as Emanuel Rosenzweig is concerned, merely declared his status as successor in interest to

the life estate of the widow. The value of such interest was to be determined in the later accounting. The net estate and consequently the net residuary estate has been greatly reduced by the allowance of the widow's claim for a debt in the total sum of $62,190.53.

By the terms of the will prior to the election by the widow, at least $11,400 per year in income was required if the corpus was not to be invaded. Since her election, at least $7,800 per year is required exclusive of the $3,600 annual income claimed by Emanuel Rosenzweig as successor in interest to the widow.

In light of the value of the residuary estate it is obvious that an invasion of the corpus is necessary if these obligations are to be met. The testator envisaged such a possibility, for in paragraph Fifth of the will he provided: " If in any month, the income of the aforesaid trust shall be insufficient to yield the minimum monthly income provided herein for each of my above-named beneficiaries, then and in that event, I authorize and direct my said trustees to make up the *deficiency or deficiencies* for any such month or months *out of the principal of said* trust, hereby authorizing and empowering my said trustees to invade the principal of *said* trust to the extent necessary to make up said *deficiency or deficiencies.*" (Emphasis supplied.) It should be noted that the testator, in referring to that single unit of time, i.e., any month, in which income might be insufficient, used the terms " deficiency or deficiencies " to be made up or paid by invasion of the " principal of *said* trust." (Emphasis supplied.) If it were intended that the whole of the trust be subject to any deficiency in a given month, the term " deficiencies " need not have been used. Deficiencies in any given month would or could occur if the trusts set up under paragraph Fourth are to be considered as separate trusts with respect to their income obligation. This view of separate trusts carved out of a whole is buttressed by the provision that upon Erica attaining the age of 30 years she is to receive outright " one-half of her *then share* in the *principal* of said trust " (emphasis supplied), with the balance of her share payable to her at age 35.

The further provisions that 70% of the income shall go to Erica and that the trust is measured by the life of Erica indicate that the welfare of Erica was the testator's primary concern.

Since the widow, by reason of her election, became entitled to one third of the net estate after deduction of debts, funeral and administrative expenses and estate taxes from the gross estate, it is apparent from the size of the estate that the property attempted to be given to others must also be invaded to satisfy her statutory right.

The declaration by the testator that Emanuel was to succeed to the widow's life interest in the income obviated the necessity of reference to section 63 of the Real Property Law, to determine who should receive such interest in the event the contingencies enumerated occurred. Such in effect was the Surrogate's determination in the earlier case that Emanuel was the person designated (*Matter of Rosenzweig, supra*). Neither the designation nor earlier construction that Emanuel was to receive the next eventual estate determined the quantum of such estate in terms of value or amount. That was to be computed on the accounting. (Cf. *Matter of Goldsmith,* 175 Misc. 757.)

Fifteen percent of the residuary estate was the intended capital of the trust for the widow with a stated income to her until death or remarriage or, as the Surrogate concluded, the exercise of her right of election. Without the allowance of the widow's claimed debt and the exercise of her discretionary right the assets of the estate of the testator apparently would have been sufficient to carry out all of his testamentary wishes. However, since the right was validly exercised the question of how her elective share is to be computed remains. It has been held that where '' a trust benefit is given to the electing spouse, the life benefit thereunder is a tangible gift which under the enumerated principle numbered ' 2,' ['' Any benefits given to the electing spouse under the will are first to be applied in solution of the elective share ''] should first be applied in satisfaction of the sum to which she is entitled.'' (*Matter of Curley,* 160 Misc. 844, 853 [matter in brackets p. 851] ; *Matter of Fisher,* 159 Misc. 190 ; *Matter of Ferrara,* 165 Misc. 900.) The gifts to others and each beneficiary under the will must contribute pro rata to make up a deficiency in the elective share where the will does not direct to the contrary. (*Matter of Byrnes,* 149 Misc. 449, affd. 235 App. Div. 782, affd. 260 N. Y. 465 ; Dodge & Sullivan, Estate Administration and Accounting, p. 130.)

In the case before us the value of the annuity to the widow exceeded the value of the trust established on her behalf. Such trust was also less than the commuted value of the life estate bequeathed to her by will. Since Erica's interest of 70% of the corpus of the residuary trust will be completely distributed to her at age 35, or such balance then remaining undistributed to her, the potential remaining of the residuary trust under the will at Erica's age 35, would have been 30%. One half of this or 15% would each have been expected to throw off at least $300 per month, otherwise the principal of each trust could be invaded. The life expectancy of Emanuel at the death of the testator was at least 12 years less than that of the widow. As

434

successor in interest to her the monetary value potential was very slight.

We hold the earlier decision (*Matter of Rosenzweig, supra*) is not *res judicata* on the issue of contributions or value of Emanuel's interest (cf. *Matter of Goldsmith*, 175 Misc. 757, *supra*). In light of the language of the will and intention of the testator as gleaned from such language and the general scheme of the will, we hold that the interest of the widow under the will must first be applied in satisfaction of her elective share and that such application exhausts her interest, leaving nothing to which Emanuel can succeed as her successor in interest.

Accordingly, the decrees so far as appealed from should be reversed on the law, without costs or disbursements, and the objections to the final account of the executrix and intermediate account of the trustee with respect to contributions to the widow's elective share dismissed. Settle order.

BOTEIN, P. J., BREITEL, RABIN and EAGER, JJ., concur.

Decrees, so far as appealed from, unanimously reversed on the law, without costs or disbursements, and the objections to the final account of the executrix and intermediate account of the trustee with respect to contributions to the widow's elective share dismissed. Settle order on notice.