In the Matter of the Estate of WILLIAM H. E. JACKSON, Deceased.

Surrogate's Court, Kings County, November 10, 1941.

*Walter Jeffreys Carlin* [*Walter Jeffreys Carlin* and *Pallister Hamilton Feely* of counsel], for Emily H. Jackson, petitioner.

*Wingate & Cullen* [*Cyrus S. Jullien* and *J. Courtney McGroarty* of counsel], for Arthur Jackson, Albert Eaton Jackson, Arthur Frederick Jackson and William Leslie Jackson, legatees, respondents.

*Connolly & Frey* [*Edward J. Connolly, Jr.*, of counsel], for The Chase National Bank of the City of New York, as executor and trustee, respondent.

WINGATE, S. Alma M. F. Giffhorn and Emily H. Giffhorn were sisters. The decedent, William H. E. Jackson, married Alma in November, 1929. She died approximately two years later. In 1934, while still a widower, the decedent executed the will which is the basis of the present controversy. By its terms he gave his " clothing, jewelry, contents of trunk and purely personal effects " to his brother, Arthur Jackson. All of his household goods and his " late wife's jewelry " he gave to his " faithful friend and sister-in-law, Emily H. Giffhorn." The residue of his estate he erected into two equal trusts, the first " for the benefit of my sister-in-law, Emily H. Giffhorn " with the income payable to her for life, and the remainder to certain named nephews, and the second for the life benefit of his brother, with remainder to the same nephews. About four years after the date of the will he married Emily. He died on November 26, 1940. His statutory distributees at death were his widow, the former Emily H. Giffhorn, and two brothers. His estate is asserted to be worth more than $100,000. The widow has filed a notice electing to invoke the provisions of section 18 of the Decedent Estate Law, and the present proceeding has been instituted under section 145-a of the Surrogate's Court Act for an evaluation of her rights in this regard.

Stated in brief, it is the position of the widow that by reason of the fact that the testamentary provisions of the will in her favor are given her with the descriptive designation of " faithful friend and sister-in-law " of the deceased, there is no gift to her as a surviving spouse within the contemplation of section 18 of the Decedent Estate Law, and that she is consequently entitled to take outright one-half of the estate in contravention of the terms of the will despite the circumstance that, as a matter of fact, if its donative terms were effectuated, she would receive either outright or on a life trust approximately one-half of the entire estate of the testator, which, under subdivision (a) of paragraph 1 of the statute, is the maximum to which a surviving spouse may lay claim.

In the memorandum filed on her behalf, reiterated stress is laid on the provisions of section 20 of chapter 229 of the Laws of 1929 which declare that the legislative purpose in the enactment

of the section is "to increase the share of a surviving spouse in the estate of a deceased spouse, either in a case of intestacy or by an election against the terms of the will of the deceased spouse thus enlarging property rights of such surviving spouse * * *."

With this as a preliminary premise it is, in effect, argued that since, prior to the enactment of section 18, the then existing provisions of section 35 of the Decedent Estate Law creating a presumption of partial revocation of a will by subsequent marriage where it was not inferable that a testamentary gift to a future wife was in contemplation of the altered status, would have effected a *pro tanto* revocation of the will in favor of the spouse, it must have been the intention of the Legislature to permit a surviving spouse to elect to take against the terms of a will which did not accord her, expressly *in her capacity as widow*, the minimum prescribed in the statute.

The initial fallacy in this syllogism lies in the misapprehension of what the Legislature had in mind in its statement in the quoted language from section 20 of chapter 229. This, however, is fully clarified in the report of the Commission upon whose recommendation the law was enacted, and which, being before the Legislature at the time of adoption of the statute, is presumed to represent its relevant mental attitude. (*American Historical Society* v. *Glenn*, 248 N. Y. 445, 451, 452; *People* v. *Schweinler Press*, 214 id. 395, 404; *Matter of Greenberg*, 141 Misc. 874, 882; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Bommer*, 159 Misc. 511, 513.)

In its original report to the Legislature (Leg. Doc. No. 70, 1928), the Commission, after an extended discussion of the illusory benefits of dower (Combined Reports of the Decedent Estate Commission, pp. 15–17), which was then a widow's sole absolute right in the property of a deceased spouse, proceeds (pp. 18, 19): "There is a glaring inconsistency in our law which compels a man to support his wife during his lifetime and permits him to leave her practically penniless at his death. * * * In line with the progressive policy of modern legislation, and in place of dower, the Commission recommends that there be substituted the right of the widow to take her intestate share against the provisions of the will. Thus disinheritance or unfair discrimination will be avoided."

When, therefore, in the enactment of the legislation recommended by the Commission, the Legislature voiced its purpose "to increase the share of a surviving spouse," all which it had in mind was an augmentation of her absolute rights from the previously existing illusory benefits of dower to the right to claim a substantial portion of his estate in the event that the provisions of his will should attempt "to leave her practically penniless

at his death." This was the evil at which the remedy was directed and the language employed in this connection may not properly be expanded to embrace any other situation.

All in which the Legislature was interested was in seeing to it that every surviving spouse should receive the specified minimum participation in the estate of a decedent which, in its estimation, constituted a reasonable provision. No room was left for any element of intention or desire on the part of the testator respecting this minimum testamentary benefit. It was compulsion from above, and in effect amounted to a condition imposed by sovereign authority upon the right of testamentary direction. (*Matter of Greenberg, supra; Matter of Curley*, 151 Misc. 664, 670; modfd. on other grounds, 245 App. Div. 255; affd., 269 N. Y. 548; *Matter of Lavine*, 167 Misc. 879, 881, 882; Butler, N. Y. Surrogate Law & Practice, § 2282.)

If the surviving spouse actually and in fact is entitled, under the terms of the will, to receive at least the specified statutory minimum, section 18 accords her no privilege of complaint; if it does not, she may enforce the right accorded by the statute to have the deficiency made good to her. The statute is uninterested in the identity or previous history of the widow, its sole aim is to afford to the individual who, at the time of death of the decedent, enjoys the status of surviving spouse that protection which it believes a person occupying that status should receive. The rights accorded are strictly conditioned on the absence of testamentary gifts up to the specified minimum " to the surviving spouse " and the sole relevant issue is consequently whether or not the person who actually occupies that status has been given this value.

Since the relevant intention is that of the Legislature and not of the testator, the appellation adopted by the latter in the designation of the recipient is wholly immaterial. So long as the person receiving the gift is, in fact, the surviving spouse, the purpose envisioned by the enactment has met with compliance.

The precedents construing the superseded text of section 35 of the Decedent Estate Law possess no possible relevancy. They merely enunciated more or less logical rules respecting the presumed intention of the testator in respect of revocation of his will by reason of an alteration of his circumstances. In the present situation the question of whether or not the testator would have wished to alter his will is immaterial. The fact is that he did not do so and is conclusively presumed to have desired that disposition of his property which the document directs. The sole remaining question is whether that document complies with the statutory conditions which render it invulnerable to attack by the widow.

Since by its terms she will receive the aggregate statutory minimum prescribed by the Legislature, it must be deemed immune to any general attack.

It is accordingly the conclusion of the court that the widow possesses no general right of election. Whether or not she possesses a limited right in this regard will depend on the value of the " household goods " and jewelry given her outright under the " fourth " item of the will. If the jewelry plus the value of the household goods which is in excess of those which devolve to her as exempt property under section 200 of the Surrogate's Court Act equals or exceeds $2,500, the outright gift to her in this regard constitutes a compliance with the terms of the statute and she may claim no more (*Matter of Curley, supra;* Butler, N. Y. Surrogate Law & Practice, § 2286); if such composite value is less, she will be entitled to receive the difference in cash, to be subtracted from the principal of her trust. The parties can presumably agree upon this point, but if they are unable to do so, the matter may be brought on for hearing and determination.

Enter decree on notice in conformity herewith.