In the Matter of the Accounting of CITY BANK FARMERS TRUST COMPANY, as Trustee under Four Trust Agreements Executed Respectively by REGINALD A. CLARKE and Others, Respondent. AUDLEY CLARKE COMPANY et al., Respondents; GERTRUDE S. KITFIELD, Appellant.— In a proceeding pursuant to article 79 of the Civil Practice Act to settle accounts of the trustee of four *inter vivos* trusts, an income beneficiary of one trust objected to an account insofar as it deducted from real estate income a sum for depreciation reserve. The real estate was owned by corporations of which the trustee of the four trusts held all the shares of stock. After trial, the objection was overruled and the accounts of the trustee and the corporations were approved. The objectant appeals from the decree entered thereon insofar as it settled the account of the trustee of the trust of which she is an income beneficiary. Decree, insofar as appeal is taken, affirmed, with costs to all parties filing briefs, payable out of the trust estate. No opinion. Adel, Acting P. J., Wenzel, MacCrate and Schmidt, JJ., concur; Beldock, J., dissents, votes to modify the decree by granting appellant her prorata share of the income represented by the reserve set aside for depreciation, and, as thus modified, to affirm, with the following memorandum: On December 29, 1931, the four individuals who held all the outstanding stock of a corporation executed four reciprocal *inter vivos* trust agreements and turned over to the trustee all the stock of the corporation as the trust property. Prior to the creation of the trusts, the only reserve for depreciation which the corporation had set up in twenty-five years of business operation was $14,000. For the next six years until 1937, there was additional depreciation of about $15,000. In 1937 the corporation became the owner

of three of the properties, and in 1944 the holder of all the stock of the corporation owning the fourth property, involved on this appeal. From 1938 to the end of the accounting period in 1949 (during all but one year of which the trustee had at least one representative on the board of directors of the corporation whose stock formed the trust property), the bulk of the depreciation reserve, amounting to about $241,000, was set up. In this proceeding to settle the accounts of the trustee of the four trusts, an income beneficiary of one of the trusts objected to the account insofar as it deducted from real estate income a sum for depreciation reserve. The court is unanimously of the opinion that a trustee is prohibited from charging real property income with depreciation, in the absence of a contrary direction in the trust instrument, and that the trust instrument here involved does not contain any expression of intention that the trustee should charge depreciation against income. However, the result of the recommendation of the majority is that, because the business of the settlors was corporate owned rather than individually owned, the trustee has been able successfully to evade this rule and to set up out of income a real property depreciation reserve of $241,000 (which is more than one third of the total real estate equities of $687,000), plus $15,000 depreciation reserve for personalty, and thus deprive appellant (an income beneficiary) of over $17,000. In my opinion, such a result is not only unjust, but unwarranted. The general rule is that a trustee owning the entire outstanding stock of a corporation, and as such sole stockholder electing the board of directors of the corporation, or suffering the directors to remain in office, must account not only for the acts of the trustee as such, but for the acts of the directors whom the trustee elects or suffers to remain in office. (*Matter of Hubbell,* 302 N. Y. 246, 254–255; *Matter of Auditore,* 249 N. Y. 335; *Matter of Steinberg,* 153 Misc. 339.) In my opinion, the trustee had control of the directors of the corporation by reason of the provisions of paragraph " Seventh " of the trust agreements, giving the trustee power and authority at all times to cause a change in the directorate by the vote of the stock, or to bring about the election of new officers, or the appointment of new agents for the corporation, or to cause such change in the management of the corporation as the trustee may deem to be for the best interests of the corporation. In recognition of the rule in the cases cited and the provisions of the trust instruments referred to, the trustee in its petition asked for approval, not only of its own acts as trustee, but approval of the trustee's acts in the conduct of the affairs of the corporation, and the management of the corporation by the directors and officers whom the trustee elected as sole stockholder of the corporation. The decree appealed from, which was prepared by the attorneys for the trustee, expressly approves the conduct of the directors of the corporation in the management of its affairs. In my opinion, these allegations in the petition of the trustee and the recital in the decree appealed from constitute an express recognition by the trustee that it controlled the directors of the corporation by controlling their election or their continuance in office. Since the trustee controlled the directors of the corporation, the same rule should apply to this trustee as to a trustee of individually owned property, to wit, the trustee should not be permitted to deprive this appellant (an income beneficiary) of the benefit of the rule that depreciation reserves may not be set up out of income for the benefit of the remainderman to the prejudice of the life tenant. (Cf. *Matter of Hubbell, supra,* pp. 254–255.) The fact that the corporation had set up depreciation reserves prior to the creation of the trusts (amounting

to \$14,000 over a period of twenty-five years) is not an indication that the settlors intended the practice to continue to an extent where, in the course of twelve years (1938–1949), the depreciation reserve should amount to \$241,000. In any event, what may have been in the minds of the settlors at the time of the creation of the trusts cannot now be used to prejudice a life beneficiary because of the rule that, unless that intention is expressly so stated in the trust instrument, a trustee may not charge real property income with depreciation, and the court is unanimously of the opinion that the trust instruments do not expressly so state. The recommendation of the majority is based, not on what the trust instruments do contain, but on outside circumstances surrounding the execution of the trust agreements, to wit, that it had been the practice for twenty-five years before the execution of the trust instruments to take depreciation. In my opinion, outside circumstances may not be referred to, especially in view of the fact that the Legislature refused in 1950 to adopt a bill expressly permitting outside sources to be considered in determining the intent of the settlors. Finally, even if it be assumed that in the case at bar the corporation could properly set up a depreciation reserve out of income, appellant's objections should nevertheless have been sustained. The reserve for depreciation was used to reduce a loan of the corporation by \$65,000, and to pay off a \$55,750 mortgage. Making these payments out of income and thus increasing capital was an improper transfer from income to capital. Yet the recommendation of the majority for affirmance means approval of this transfer, which even the trustee does not attempt to justify. Furthermore, the trustee states that the balance of the depreciation reserve was used to offset (in part) a \$178,000 capital loss in a concrete company. This may have been advantageous to the corporation for tax purposes, but, so far as the life beneficiary was concerned, it was another improper transfer from income to principal.