In the Matter of the Accounting of SECURITY TRUST COM-
PANY OF ROCHESTER, as Executor of WILLIAM P. BARROWS,
Deceased.

Surrogate's Court, Monroe County, June 26, 1953.

*Byron A. Johnson* for executor and others, petitioners.

*Gilbert A. Nusbaum* and *Carl C. Tarricone* for Irene S. Barrows, respondent.

*Sidney K. Backus,* special guardian for Suzanne H. Barrows, an infant, respondent.

WITMER, S. Because testator's widow was raising important questions concerning the manner in which the executor was conducting the affairs of this estate the executor and children of testator through his prior marriage joined in a petition requesting that the court permit the executor to render an intermediate account and requesting the court to make some determinations. The widow also filed a petition for like relief; an order was made directing the executor to file such account, and the account was filed. The widow interposed several objections thereto, and evidence was taken with respect to the objections.

The first objection is to the failure of the executor to set off certain exemptions to the widow under section 200 of the Sur-

rogate's Court Act. All items referred to in subdivisions 1 and 2 of said section were bequeathed to the widow and so no question arises with respect thereto. Two questions are raised, however, with respect to the exemptions provided for in the rest of the section. The first relates to subdivision 3 thereof. The testator maintained his home in a suburb of Rochester, and was president, manager and principal stockholder of two corporations in Rochester to which he devoted most of his time. He also owned and maintained a farm about forty miles from Rochester on which was located a residence which he and his wife sometimes used week-ends. He had some riding horses at the farm, but the principal use to which the farm was put was raising beef cattle. There were certain farm tools and automotive equipment on the farm used in connection with the cattle business. The widow demands that there be set off to her the domestic animals, farm machinery and tractor to the value of $1,000, as provided in subdivision 3 of section 200 of the Surrogate's Court Act. Although the specified items of property have been sold, the cash proceeds are in the hands of the executor, far in excess of the sum of $1,000, and it is not questioned that the cash will be subject to the determination of this issue. (*Matter of Phillips*, 169 Misc. 86, 92.)

The executor submits the question to the court but suggests that the purpose of said subdivision 3 of the statute is to allow to the family of a farmer the items referred to therein to aid the surviving spouse in continuing the family unit, and that since testator's family did not reside on the farm or depend upon it for support, such exemptions do not apply in this case.

There may be some merit in the suggestion of the executor for the consideration of the Legislature in connection with any proposed revision of the section. But the statute as it stands, literally read and interpreted, requires that the exemptions be allowed. It provides: " If a person having a family die, leaving a widow  *  *  *  the following articles shall not be deemed assets but must be included and stated in the inventory of the estate as property set off to such widow ''. It is true that the scope of statutes is sometimes restricted through construction in the light of the intent and object of the Legislature. Weighing against the suggested narrow construction of this statute is the tendency of the courts to favor the widow and dependent children of the deceased. This tendency is found frequently in the law, including cases involving section 200 of the Surrogate's Court Act wherein the word " family '' has been interpreted to include a spouse from whom the deceased

had been separated for years, and who never resided in decedent's last home. (*Matter of Osborn,* 220 N. Y. 595; *Matter of Schwab,* opinion filed in this court June 12, 1953, and cases cited therein.)

The exemption statute expressly benefits the widow herein, and it is held that she is entitled to the exemptions provided for in subdivision 3 thereof.

The second objection concerning exemptions relates to subdivision 4 of said section. The testator bequeathed all of his personal and household effects to his wife and devised and bequeathed the residue of his estate to his trustee to hold 40% thereof for the use of the widow for life, the remainder equally to his five children, and to hold 60% thereof in five equal trusts for his five children. The executor has paid the widow $200 of the $300 exemption provided for in subdivision 4 of section 200 of the Surrogate's Court Act ▌ but questions whether she is entitled to the additional $100. It suggests that inasmuch as testator bequeathed all of his personal effects to his widow and the rest of his estate in trust, and inasmuch as the personal effects bequeathed and delivered to the widow exceed the sum of $100 unpaid on the claimed exemptions, she has received the "other personal property" referred to in said subdivision 4 of said statute, and is not entitled to the additional $100.

The widow is entitled to the statutory exemptions whether the decedent died testate or intestate, and even against the provisions of the testator's will. (*Matter of Curley,* 151 Misc. 664, 671–672, mod. 245 App. Div. 255, affd. 269 N. Y. 548; *Matter of Jackson,* 177 Misc. 480, 484, affd. 264 App. Div. 783; *Matter of Sheppard,* 189 Misc. 367; *Matter of Ball,* 172 Misc. 181; *Matter of Curley,* 160 Misc. 844, 846; *Matter of Jermyn,* 72 N. Y. S. 2d 244, 246.) The question, then, presented to the court is not whether the widow is entitled to her exemptions but, since all personalty has been bequeathed, from what source shall the exemptions be taken? In other words, whose ox shall be gored?

Ordinarily, it would seem that such exemptions should be taken out of personalty not specifically bequeathed, that is, out of the residue; and only if all personalty were specifically bequeathed would the question of apportionment arise. (With reference to the latter, see Decedent Estate Law, §§ 26, 18, subd. 2; *Matter of Curley,* 160 Misc. 844, 852–853, *supra*; *Matter of Topazio,* 175 Misc. 132, and *Matter of Hurwitz,* 176

Misc. 719, 720.) If the testator's estate were half realty and half personalty and he devised all his realty to his widow and bequeathed all his personalty to one other, clearly the gift of personalty would be subject to the deduction of the widow's exemptions, and there would be no question as to the source thereof. Here, part of the personalty, the personal effects, were bequeathed to the widow and the residue to the trustee. The bequest to the trustee is clearly subject to deduction for at least part of the widow's exemptions under subdivision 4, and the only question which can be raised is whether or not the bequest of personal effects to the widow, insofar as it exceeds the statutory exemptions, is likewise subject to a prorata deduction. I hold that it is not, and that all of such exemptions are chargeable to the residue bequeathed to the trustee.

The objections of the widow are directed primarily at the retention by the executor of the stock held by the testator at his death in two corporations, McFarlin Clothing Company and Bar-Mac Corporation, to the conduct of the affairs of the two corporations through their respective boards of directors as separate corporate entities instead of dissolving them and treating the resulting assets as part of the estate held in trust under the terms of the will, and to the continuance of the business of the clothing corporation. It appears that the testator owned well over 90% of the stock in those two corporations, and the executor continues to hold the controlling stock interest in them.

In "Article Four" of his will the testator authorized his executor to retain the securities and properties owned by him at his death during the administration of the estate and turn over to the trustee all not needed for the specific bequest to the widow and for taxes and administration expenses; and he authorized his trustee to accept and retain such securities and properties as part of the trusts. In "Article Five" the testator gave to his trustee plenary powers in dealing with the assets of the trusts, except that he did not expressly authorize his executor or trustee to conduct any business.

The widow's objections to the continuance of the corporate entities are based upon the facts that the corporations are required to pay income taxes and that they set aside from income reserves for depreciation and other purposes and retain in the corporate treasuries earnings above those paid out as dividends. It appears that if the corporations were dissolved the total income taxes would be reduced by many thousands of dollars annually. And, of course, if the business, and par-

ticularly the management of the real estate, were conducted by the trustee directly and not through the corporations and boards of directors, no reserves for depreciation and expansion could be accumulated, and all net income would have to be paid to the income beneficiaries. (*Matter of Davies*, 197 Misc. 827.) In this connection the widow also contends that there is no authorization in the will for the executor or trustee to continue the retail clothing business of the testator, either through the corporations or directly, if the corporations be dissolved. Thus it is contended that the executor is wrongfully conducting the affairs of the estate to the detriment of the widow.

The corporations involved were principally owned and operated by the testator for many years prior to his death. The trustee has continued many of the directors and personnel who conducted the affairs of the corporations along with the testator in his lifetime. The corporations have continued to prosper and have paid substantial dividends. No charge is made that the executor is acting in bad faith nor that the boards of directors are acting in bad faith. No evidence has been presented to establish that the directors are exercising their judgment improperly and unreasonably in respect of corporate reserves or dividends. The widow charges that the executor is using bad judgment in not causing the two corporations to be dissolved, because of the income tax situation, and is acting illegally in continuing to hold the stock in the corporations and carrying on the clothing business either through the corporation or otherwise.

It is to be observed that the widow's contention that great income tax savings could be had by dissolving the two corporations was equally true during the lifetime of the testator, and yet he apparently believed that the advantages of conducting the business and managing the realty through the corporations exceeded the disadvantages. In the light of his life work and experience he bequeathed *his stock* in these two corporations to his trustee *with authority to hold as part of the trusts,* and he authorized his executor to hold such stocks during the period of estate administration and turn them over to the trustee. Such provisions of the will constitute sufficient authority for the executor and the trustee to hold the stocks and thus to control the management of the business. (*Matter of Kohler,* 231 N. Y. 353.)

The executor deems it for the best interest of the estate to continue to hold the corporate stocks and have the corporations continue their businesses. This it may do as provided in the

will. Under the circumstances and upon the record in this case the court has no cause to interfere with the executor in this respect. Of course, the retention of the stocks is subject to the exercise of prudent judgment on the part of the executor and trustee. (See *Matter of Hubbell,* 302 N. Y. 246, 256.) *Matter of Bancroft* (196 Misc. 787) and similar cases relied upon by the widow are not in point.

Since the fiduciary holds the controlling stock interests the affairs of the corporations are subject to the jurisdiction of this court. (*Matter of Hubbell, supra,* p. 254.) The executor has readily acknowledged this and has given the widow full particulars concerning the operations of said corporations. Nothing has been adduced in this case to raise a doubt as to the good faith and the propriety of the acts of the trustee and the respective boards of directors. In the absence of bad faith, misfeasance or nonfeasance on the part of the fiduciary the court will not interfere with the conduct of the fiscal affairs of the corporations controlled by the fiduciary as principal stockholder, and will not substitute its judgment for that of the directors. (*Matter of Kohler, supra,* p. 366 *et seq.; Matter of Clarke,* 281 App. Div. 905; *Matter of Edwards,* 279 App. Div. 841, affg. 102 N. Y. S. 2d 715, 720–721; and, see, *Matter of Doelger,* 254 App. Div. 178, 183–184, affd. 279 N. Y. 646, and *Matter of Strong,* 198 Misc. 7, 19, affd. 277 App. Div. 1157.)

Accordingly, the objections of the widow with respect to the retention of the corporate stock and the conduct of the executor with respect thereto are dismissed.

Although this is only an intermediate accounting by the executor, more than sixteen months had elapsed before this proceeding was instituted, and the nominated trustee had not at that time nor has it since applied to have letters of trusteeship issued to it under the will. Apparently it has awaited the outcome of this proceeding before applying for such letters. That should be done now without delay. Assuming that the said corporate stock holdings are turned over to the trustee, the trustee will thereafter be charged with the duty of requiring the directors to act in good faith in the conduct of the affairs of the corporations so that the rights of neither the life tenant nor the remaindermen shall be improperly affected. This decision, of course, is without prejudice to any rights of the widow which may arise out of subsequent conduct by the trustee and directors not in harmony herewith.

Objection is also made with respect to the appraisal and sale of the personalty on the farm. All of said objections are dis-

missed, except the one relating to the commissions of 5% paid to Russell McDowell upon $800 representing the sale price of three head of cattle which Mr. McDowell sold to himself. It appears that Mr. McDowell had managed the farm for years for the testator, and was well acquainted with the values of farm equipment and cattle. The executor employed him to appraise and sell the same, he to receive 5% commission on the live stock sold. Some of the cattle were sold at private sale and some at public sale. The three head of cattle in question were offered at public sale, but the bids thereon were less than Mr. McDowell's appraisal values. He, therefore, declined to permit them to be sold, and to complete the liquidation, he later bought them himself for the appraised figures. To this point there is no reason to criticize him nor the executor; rather they are to be commended. Nevertheless, it is not proper for the executor to pay a commission to the buyer. Had the sale been made for 95% of the appraised price, possibly no objection could be made thereto. Although the said three head were bought in by the man who appraised them, the transaction occurred only after a public sale failed to yield the appraised price. Nevertheless, under the circumstances, the court feels constrained to surcharge the executor in the sum of $40 for the commissions paid to Mr. McDowell on this transaction.

Submit decree accordingly.